**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**MICHAEL COADY**
4574 Clermont Mill Road
Street, MD 21154

and

**CHARLES JENKINS**
5223 Hydes Road
Hydes, MD 21082

and

**LARRY HOLMES**,
8 East Trails Road
Airville, PA 17302,

        Plaintiffs

**v.**

**NATIONWIDE MOTOR SALES CORP.
dba NATIONWIDE INFINITI OF
TIMONIUM, NATIONWIDE KIA,
NATIONWIDE NISSAN, and
NATIONWIDE MOTOR SALESS aka
NATIONWIDE PRE-OWNED**
2085 York Road
Timonium, MD 21093
<u>Serve:</u>
Steven R. Freeman, Esq.
Freeman, Wolfe & Greenbaum, P.A.
409 Washington Avenue
Suite 300
Towson, MD 21204
*Registered Agent*

and

**WILLIAM H. SCHAEFER, JR.**
9 Hendricks Isle
Fort Lauderdale, FL 33301

and

Civil Action No. _____

**BRANDON E. SCHAEFER**
106 Graystone Farm Road
White Hall, MD 21161,

          Defendants.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Michael Coady, Charles Jenkins, and Larry Holmes, through the undersigned counsel and on behalf of themselves and other persons similarly situated, sue Defendants Nationwide Motor Sales Corp. doing business as Nationwide Infiniti of Timonium, Nationwide Kia, Nationwide Nissan, and Nationwide Motor Saless aka Nationwide Pre-Owned; William H. Schaefer, Jr.; and Brandon E. Schaefer, and complain as follows:

## INTRODUCTION

1.     Defendant Nationwide Motor Sales Corp. ("NMSC") is engaged in the business of selling automobiles. NMSC owns and operates four car dealerships under trade names: Nationwide Infiniti of Timonium ("Nationwide Infiniti"); Nationwide Kia; Nationwide Nissan; and Nationwide Motor Saless aka Nationwide Pre-Owned ("Nationwide Pre-Owned") (collectively, the "Dealerships"). Defendants William H. Schaefer, Jr. and his son, Brandon E. Schaefer (together, the "Individual Defendants") are shareholders of NMSC.

2.     Plaintiffs Michael Coady, Charles Jenkins, and Larry Holmes (collectively, "Plaintiffs") bring this action on behalf of themselves and a putative class of persons who currently are or previously were employed by NMSC at the Dealerships and who were compensated in part via the payment of commissions (the "Commission Class").

3.     In addition to base wages, Plaintiffs and the Commission Class were compensated on commission. Commissions at all the Dealerships were calculated as a percentage of the net profit from each vehicle or service sale. The greater the difference between cost and sale price, the

greater the net profit and correspondingly the greater the commission for the employee. Conversely, the smaller the difference between cost and sale price, the smaller the net profit and correspondingly the lower the commission for the employee. The cost and sale price of each vehicle were kept in Defendants' computer system for use in calculating and paying commissions.

4.      Beginning at least as early as 2013 and continuing to the present, Defendants instituted a policy and practice of falsely inflating the costs associated with the sale of vehicles in their computer system. In this manner, Defendants falsely represented to Plaintiffs and the Commission Class a net profit on each vehicle sale that was lower than Defendants' actual net profit, and in turn, paid lower commissions to Plaintiffs and the Commission Class than what Plaintiffs should have received based on the actual net profit. This policy and practice was instituted at the direction of and for the benefit of the Individual Defendants, William H. Schaefer, Jr. and Brandon E. Schaefer. When confronted about the policy, the Individual Defendants told at least one Plaintiff that, if he did not like the policy, he "knew where the door was."

5.      Due to Defendants' years-long practice of falsely inflating costs, Plaintiffs and the Commission Class have collectively been underpaid millions of dollars in earned but unpaid commissions, and with statutory treble damages under the Maryland Wage Payment and Collection Law (MWPCL), Md. Code, Lab. & Empl. § 3-501 *et. seq*., significantly more than five million dollars. Plaintiffs and the Commission Class bring claims for treble damages under the MWPCL and common law claims for unjust enrichment arising from Defendants' pattern and practice of underpayment, along with an accounting to determine the amounts due and owing from Defendants' wrongful underpayment.

6.      In addition to the claims brought by Plaintiffs on behalf of the Commission Class, Plaintiffs bring claims under both state and federal law on behalf of similarly situated persons who

quit or were terminated from employment for the three years prior to the filing of this complaint by NMSC (the "Collective").

7.      Defendants did not pay departing employees their entire last paycheck. In order to avoid paying departing employees in full, Defendants would deduct large portions of the employee's final paycheck, without justification or with a false justification. For instance, Defendants would claim that prior commission payments were "advances" on the employee's final paycheck and reduce the paycheck by the amount of these "advances."

8.      Plaintiffs and Collective members were exempt from the overtime requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., because their regular rate of pay was more than one and a half times the federal minimum wage and more than half of their compensation came from commissions. *See* 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

9.      As a result of these wrongful deductions from employees' final paychecks, Plaintiffs and the Collective were paid less than the amount they were owed per hour under the federal minimum wage for those hours corresponding to their final paychecks. 29 U.S.C. §§ 206-07; 29 C.F.R. § 779.419. These underpayments also constitute a violation of the MWPCL.

10.     Plaintiffs and the Collective bring claims under the FLSA and MWPCL to remedy these violations.

## PARTIES

11.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 as a class action on their own behalf and on behalf of the entire class of persons similarly situated.

12.     With regard to the claims of the Collective, Plaintiffs bring this action as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf and on behalf of the collective of persons similarly situated.

13.     Plaintiff Michael Coady is an individual residing in Harford County, Maryland. Mr. Coady worked for Defendant NMSC and reported to the Individual Defendants from approximately April, 2018 until approximately August, 2018.

14.     Plaintiff Charles Jenkins is an individual residing in Baltimore County, Maryland. Mr. Jenkins worked for Defendant NMSC and reported to the Individual Defendants during four different periods of time, most recently from approximately October to approximately November, 2019.

15.     Plaintiff Larry Holmes is an individual residing in York County, Pennsylvania. Mr. Holmes worked for Defendant NMSC and reported to the Individual Defendants from approximately December 2018 through approximately January 2019.

16.     Defendant NMSC is a corporation formed and headquartered in Baltimore County, Maryland. It operates under the trade names Nationwide Infiniti, Nationwide Kia, Nationwide Nissan, and Nationwide Pre-Owned. Although the Dealerships operate under various trade names, NMSC operates all four Dealerships as a single entity.

17.     Individual Defendant William H. Schaefer, Jr. is an individual residing in Broward County, Florida. He is the President of NMSC and the father and business partner of Defendant Brandon E. Schaefer, and with Defendant Brandon E. Schaefer owns and operates NMSC. Mr. Schaefer sets the policies and procedures for NMSC, including the payment of wages.

18.     Individual Defendant Brandon E. Schaefer is an individual residing in Baltimore County, Maryland. He is the Secretary of NMSC, and the son and business partner of Defendant William H. Schaefer, Jr., and with Defendant William H. Schaefer, Jr. owns and operates NMSC. Mr. Schaefer sets the policies and procedures for NMSC, including the payment of wages.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 because Plaintiff brings claims pursuant to a federal statute, 29 U.S.C. § 216(b). The Court

has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.

20.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1332(d) because this is a class action in which there are at least one hundred and fifty

Class Members in the proposed Class (which is defined below), the combined claims of proposed

Class Members exceed $5,000,000 exclusive of interest and costs, and members of the putative

class of plaintiffs are citizens of different states than any Defendant.

21.     The Court has personal jurisdiction over all Defendants. Defendants NMSC and the

Dealerships are located in Maryland, and Defendant Brandon E. Schaefer resides in Maryland.

Defendant William H. Schaefer, Jr. controls the operation of NMSC and the Dealerships in

Maryland from his residence in Florida, and regularly travels to Maryland for business purposes.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial

part of the events giving rise to Plaintiffs' and Class Members' claims occurred in Maryland and

all Defendants are subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

**A.  Defendants' Improper Non-Payment of Commissions.**

23.     NMSC has operated car dealerships for over thirty years. The current dealerships

operated by NMSC are Nationwide Infiniti, Nationwide Kia, Nationwide Nissan, and Nationwide

Pre-Owned.

24.     NMSC and the Dealerships are wholly owned by the Individual Defendants, who

have operated NMSC as a closely held business for its entire existence.

25.     The Individual Defendants are, and at all relevant times were, directly involved in formulating the policy and direction of NMSC, and have operational control over NMSC and the Dealerships, including operational control over the policies, practices, and procedures governing the calculation and payment of wages and commissions that are the subject of this action.

26.     Each of the Dealerships sells new and used cars. On information and belief, during the time period relevant to this action, NMSC, through the Dealerships, has sold over 4,000 cars per year.

27.     On information and belief, during the time period relevant to this action, NMSC and the Dealerships employ or have employed between 150 and 200 persons in various sales-related positions (collectively referred to as "commissioned employees"), all of whom were responsible for selling cars.

28.     Commissioned employees at all four Dealerships were paid a base wage, plus a commission on the sale of each vehicle, as well as volume bonuses for selling a certain number of cars in each month.

29.     The commission calculation formula, and all exceptions thereto, were provided in writing to each commissioned employee. All commissioned employees signed a "Pay Plan," which was countersigned by a manager, acknowledging and agreeing to the commission structure.

30.     Under the Pay Plans, a salesperson's commission on a particular sale was calculated based on the net profit—sale price minus costs—of the vehicle sold. Defendants and their employees referred to this net profit as the "back end gross" or "gross commissionable proceeds."

31.     For supervisory sales employees, the calculation was similar—a smaller percentage of the net profit on each vehicle sold by each salesperson that the manager or director supervised.

32.     The Pay Plans provided that the commission on the sale of a car would be either a percentage of the net profit on the sale or a defined flat commission, whichever was greater, depending on the sale price and the length of time that the car had been in inventory.

33.     Commissions for salespersons and their supervisors were calculated in an identical manner based on the "cost" allocated by Defendants.

34.     The true and unaltered acquisition costs of each vehicle, and all alterations to the acquisition costs, were hidden from Plaintiffs and the Commission Class. These costs and alterations, which were used to calculate commissions, were kept on a computer system known as the "Back Screen," available only to ownership, accounting staff, and upper management.

35.     Commissioned employees, including sales managers, generally did not have access to the Back Screen or a breakdown of real, true, or unaltered costs. Instead, commissioned employees were given only a total cost of each vehicle they sold when they received their commissions.

36.     Beginning at least as early as 2013 and continuing to the present, Defendants used the limited access to the Back Screen to intentionally pay commissioned employees less than promised in the Pay Plans.

37.     When entering costs for each vehicle into the Back Screen, Defendants added fictitious or unauthorized costs to the vehicle, thereby artificially deflating the recorded net profit on the eventual sale of the car and in turn reducing the amount of an employee's commission on that sale.

38.     These fictitious or unauthorized costs took several forms.

39.     First, Defendants added a fictitious acquisition cost to each new or used vehicle they acquired. Defendants referred to this as a "packing cost," but it did not represent any actual

good or service paid for. This "packing cost" improperly reduced the commission on each vehicle sale by hundreds of dollars. Plaintiffs and other employees refer to the difference between the commission to which they were entitled and the reduced commission paid after the wrongful addition of the "packing cost" as the "Packing Reduction."

40.     Second, Defendants added $500 to the cost of each car sold on wholesale, which generally totaled around 50 vehicles per month. While the Pay Plans authorized the use of a lower sale price in wholesale deals, they did not mention or authorize any additional cost to be included in the commission calculation. The additional $500 in "wholesale costs" improperly reduced the commission on each wholesale deal. Plaintiffs and other employees refer to the difference between the commission to which they were entitled and the reduced commission paid after the wrongful addition of the "wholesale costs" as the "Wholesale Reduction."

41.     Third, on several occasions, the Dealerships ran promotions in which every customer who purchased a vehicle would receive a defined item, such as a television, a laptop computer, or a vacation package. The cost to NMSC of the item was inflated and added to the cost calculation for commissions. For instance, in 2017 NMSC purchased televisions for $250 each as promotional items, but added $400 to the cost calculation of each vehicle subject to the promotion on the Back Screen. In 2018 NMSC purchased laptops for $300 each as promotional items, but added $500 to the cost calculation of each vehicle subject to the promotion on the Back Screen. In this way, Defendants improperly reduced the commission on the sale of each vehicle subject to the promotion. Plaintiffs and other employees refer to the difference between the commission to which they were entitled and the reduced commission paid after the wrongful addition of the promotional items' inflated cost as the "Promotional Reduction."

42.     Finally, Defendants added various fictitious or unauthorized costs to secondary services offered with car sales, such as inspections, gap insurance, warranties, etc. These costs improperly reduced the commission on each sale. Plaintiffs and other employees refer to the difference between the commission to which they were entitled and the reduced commission paid after the wrongful addition of costs to secondary services as the "Service Reduction."

43.     Collectively, Plaintiffs refer to the Packing Reduction, the Wholesale Reduction, the Promotional Reduction, and the Service Reduction as the "Reductions."

44.     The Reductions were not disclosed by Defendants to any of their employees who were paid commissions, either in the Pay Plans or in commission payments for individual sales.

45.     Defendants deliberately failed to disclose the Reductions to Plaintiffs and the Commission Class, by itemizing these Reductions only on the Back Screen system to which commissioned employees did not have access.

46.     Indeed, Defendants may have used additional falsified or modified "costs" of which Plaintiffs are currently unaware to further reduce the commissions paid.

47.     Because of Defendants' concealment of the Reductions, Plaintiffs and the Commission Class did not learn and could not have learned of the Reductions until after they had already started working at the Dealerships.

48.     Plaintiffs only learned of the Reductions from other employees, and not from Defendants.

49.     For instance, Plaintiff Michael Coady learned of the Reductions from Scott Slater, then NMSC's Finance Director, after Mr. Slater noticed discrepancies between his expected and received commissions and asked the Individual Defendants about the issue. The Individual Defendants initially denied that any discrepancy existed. After Mr. Slater persisted, the Individual

Defendants eventually explained that they added costs to keep commissions from getting too high, and told Mr. Slater to "keep his mouth shut" about it.

50.    Mr. Slater told Plaintiff Coady about the Reductions.

51.    Plaintiff Coady also approached both of the Individual Defendants to discuss the Reductions.

52.    Both Individual Defendants told Plaintiff Coady that the Reductions would remain in place, and if Plaintiff Coady did not like it, he "knew where the door was."

53.    Plaintiff Jenkins did not learn of the Reductions until, while working as a salesman, his sales manager informed him that he needed to try to sell vehicles at a higher price, because the Reductions would keep him from receiving the commissions that he expected to earn at the prices he had been getting for each car.

54.    Plaintiff Holmes, meanwhile, never found out for certain that the Reductions existed until after his termination, although discrepancies between his expected and received commissions aroused his suspicion. Before he could learn what was happening, however, Defendants terminated his employment.

55.    The Individual Defendants directed managerial and supervisory employees to respond in a dismissive manner to any employee who brought up or complained about the Reductions—just as they had personally done to Plaintiff Coady.

**B.  <u>Defendants' Minimum Wage Violations.</u>**

56.    In addition to failing to pay Plaintiffs and the Commission Class their entire earned commissions, Defendants failed to pay departing employees the full amount due on their final paychecks.

57.     Defendants accomplished this underpayment by improperly deducting falsified or unauthorized "costs" from an employee's final check.

58.     For instance, when issuing a commissioned employee's final paycheck, Defendants would treat commissions that the employee had earned and been paid during that pay period as "advances" on the employee's paycheck, even though commissions were paid separately from and had no bearing on the payment of base wages.

59.     Nothing in the Pay Plan or any other agreement indicated that a commissioned employee's final commissions would be treated as "advances" or that any other deduction from an employee's final paycheck was proper.

60.     As a result of Defendants' improper deductions, each commissioned employee was underpaid by hundreds or thousands of dollars on their final paychecks.

61.     During their tenure of employment by NMSC, commissioned employees were treated as exempt from the overtime requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., because their regular rate of pay was more than one and a half times the federal minimum wage and more than half of their compensation came from commissions. *See* 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

62.     As a result, even though commissioned employees typically worked more than 40 hours per week, they were never paid overtime.

63.     Due to Defendants' improper deductions and the resulting underpayment, Plaintiffs and the Collective were paid less than one and a half times the federal minimum wage, and were not paid any commission or overtime, on their final checks despite earning commissions and working more than forty hours per week.

64.     Defendants therefore violated the minimum wage provisions of the FLSA on each departing employees' last paycheck by failing to properly compensate them at or above the hourly minimum wage rate they were owed. *See* 29 U.S.C. §§ 206-07; 29 C.F.R. § 779.419.

### C.  The Individual Defendants' Operational Control Over NMSC.

65.     The Individual Defendants are, and at all relevant times were, jointly responsible for all operations of NMSC and the Dealerships.

66.     Brandon Schaefer is on-site at one or more of the Dealerships nearly every day.

67.     William Schaefer splits his time between Maryland and his residence in Florida, but is directly involved in the day-to-day operations of NMSC and the Dealerships and is the final decision-maker on practically every significant action taken by NMSC.

68.     Indeed, William Schaefer regularly called sales managers, sales directors, and front-line salesmen to berate them about the need to sell more cars.

69.     Both Individual Defendants hold regular meetings with supervisory and managerial staff at the Dealerships to direct NMSC's operations.

70.     The Individual Defendants are the owners of NMSC and the Dealerships, and they are responsible for setting all policy, including policies related to payment of wages and commissions, and make all final decisions pertaining to the operation of NMSC and the Dealerships.

71.     With respect to the Reductions, the Individual Defendants not only instituted the Reductions, they personally directed NMSC's response to employees who raised concerns about the Reductions.

72.     With respect to the deductions from employees' final paychecks, the Individual Defendants instituted and directed NMSC's policy of underpayment.

73.     The extent and nature of the Individual Defendants' involvement in all aspects of the business indicates the Individual Defendants' operational control over NMSC and the Dealerships, including with regard to the acts and omissions at issue in this action.

**FACTUAL ALLEGATIONS RELATED TO
THE INDIVIDUAL CLASS REPRESENTATIVES**

**A.  Plaintiff Michael Coady**

74.     Plaintiff Coady was hired by Defendants as a used car sales director at Nationwide Nissan in or about April 2018.

75.     When Plaintiff Coady was hired, he asked Rick Sterry, then NMSC's general manager, about the costs involved in calculating net profit for commission purposes. Mr. Sterry told Plaintiff Coady that there would be "no inflation" of costs for commission purposes.

76.     Plaintiff Coady supervised sales staff at Nationwide Nissan and received a commission on those sales, and also conducted his own sales for which he earned commissions.

77.     The day he was hired, Plaintiff Coady, like all other salespeople, signed a Pay Plan setting forth the calculations and nature of his commissions.

78.     Plaintiff Coady was never provided access to the Back Screen system, and was never provided with an itemization of true and authorized costs on cars that he sold.

79.     Plaintiff Coady did not learn of the Reductions until his conversations with Scott Slater in approximately July or August 2018.

80.     Plaintiff Coady did not learn of the Individual Defendants' involvement in the Reductions until his conversations with the Individual Defendants in or about August 2018.

81.     Plaintiff Coady ended his employment with Defendants on or about August 27, 2018, out of frustration with the Reductions and the Individual Defendants' unwillingness to address the issue.

82.     Plaintiff Coady and the salespeople he supervised at NMSC sold approximately 50-60 cars per month during his employment with Defendants. Plaintiff Coady received a commission on each sale he made and each sale made by salespeople he supervised.

83.     Every commission received by Plaintiff Coady during his tenure with Defendants was wrongfully reduced by the Defendants' imposition of the Reductions.

84.     When Plaintiff Coady received his final paycheck, Defendants had improperly deducted falsified "costs" from the amount he earned. He was paid just $387.63, before taxes, despite having worked approximately 45 hours during that pay period, for an approximate hourly wage of $8.61—far below the wage required by the FLSA exemption to which he was subject. *See* 29 U.S.C. §§ 206-07.

## B. Plaintiff Charles Jenkins

85.     Plaintiff Charles Jenkins worked for Defendants on four separate occasions as a sales manager, internet sales manager, and salesman. On all four occasions, Plaintiff Jenkins worked at Nationwide Nissan and/or at Nationwide Pre-Owned.

86.     Plaintiff Jenkins was first hired in 2015, and left later that year. Defendants rehired Plaintiff Jenkins in or around October 2017, and employed him until approximately April 2018, when they again terminated him. Defendants rehired Plaintiff Jenkins a few months later, in or around September 2018, and terminated him for a third time in approximately April 2019. Finally, Defendants hired Plaintiff Jenkins once more in October 2019 as a non-managerial salesperson, and he quit to take another job on or about November 23, 2019.

87.     Plaintiff Jenkins supervised sales staff at Nationwide Nissan and Nationwide Pre-Owned, supervised internet sales, and earned commissions on both. He also conducted his own sales, for which he earned commissions, including while working as a salesman.

88.     Upon each hiring, Plaintiff Jenkins signed Pay Plans setting forth the calculations and nature of his commissions.

89.     Plaintiff Jenkins was never provided access to the Back Screen system, and was never provided with an itemization of true and authorized costs on cars that he sold.

90.     Plaintiff Jenkins and the salespeople he supervised sold approximately 30 cars per month during his employment with Defendants. Plaintiff Jenkins received a commission on each sale he made and each sale made by salespeople he supervised.

91.     Every commission received by Plaintiff Jenkins during his tenure with Defendants was wrongfully reduced by the Defendants' imposition of the Reductions.

92.     Plaintiff Jenkins never received a final paycheck. However, his online ADP payroll account, which stated that the final check was paid, listed the pay amount as approximately $100, when his final check should have been over $1,000.

93.     Even if Plaintiff Jenkins had received his final check, it would have been far below the minimum wage required by the FLSA exemption to which he was subject as a non-managerial salesperson. *See* 29 U.S.C. §§ 206-07.

### C.   Plaintiff Larry Holmes

94.     Defendants hired Plaintiff Holmes in late 2018 as a sales director for Nationwide Pre-Owned. He was employed for approximately two months, until January 2019, when Defendants terminated his employment.

95.     Plaintiff Holmes supervised sales staff at Nationwide Pre-Owned and received a commission on sales made by his staff.

96.     Plaintiff Holmes was never provided access to the Back Screen system, and was never provided with an itemization of true and authorized costs on cars that he sold.

97.     Plaintiff Holmes and the salespeople he supervised sold approximately 65 cars in total during his employment with Defendants. Plaintiff Holmes received a commission on each of these sales.

98.     Every commission received by Plaintiff Holmes during his tenure with Defendants was wrongfully reduced by the Defendants' imposition of the Reductions.

99.     Plaintiff Holmes's final paycheck was improperly reduced by several hundred dollars in false or improper deductions, leaving his pay for the final pay period below the minimum wage required by the FLSA exemption to which he was subject. *See* 29 U.S.C. §§ 206-07.

## CLASS ACTION ALLEGATIONS

100.    The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

101.    The putative class in this case is defined as follows:

> All individuals who are or were employed by Defendant Nationwide Motor Sales Corp. doing business as Nationwide Infiniti of Timonium, Nationwide Kia, Nationwide Nissan, and Nationwide Motor Saless aka Nationwide Pre-Owned during the period between April 20, 2017 and the present, and who earned a commission on the sale of any used or new vehicle during that period.

102.    Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

103.    The questions of law and fact in this action are common to all putative class members.

104.    These questions of law and fact are not only common to the class, but predominate over any question affecting only individual class members. The predominating questions include, but are not limited to:

> a.   Whether Defendants implemented the Reductions;

b.   Whether Defendants implemented any other similar reduction;

c.   What software and other systems were used to maintain and itemize costs, and who had access to those systems;

d.   Whether accounting practices were identical across all four Dealerships;

e.   Whether costs or sale prices attributed to vehicle sales were changed after the sale had occurred;

f.   Whether the Reductions had any purpose other than reducing the commissions earned by the Commission Class;

g.   Whether the Reductions were authorized by the Pay Plans;

h.   Whether Defendants' use of the Reductions violates the Maryland Wage Payment and Collection Law;

i.   Whether Defendants concealed the use of the Reductions from the Commission Class at the time class members were hired; and

j.   Whether Defendants took any wrongful action.

105.   The claims of the Plaintiffs are typical of the claims of the respective class members.

106.   The Plaintiffs will protect the interests of the class. The interests of Plaintiffs and other class members are substantially identical.

107.   Plaintiffs' counsel has experience in complex litigation and class action proceedings and will adequately represent the interests of the class.

108.   The Commission Class consists of at least 150 individuals, and the class is therefore so numerous that joinder of all members is impracticable.

109.     Separate actions by individual class members would create a risk of inconsistent or varying adjudications of questions of law and fact that would establish incompatible standards of conduct for the Defendants.

110.     Because this action entails questions of law and fact common to all putative class members, which predominate over any questions affecting only individual plaintiffs, a class action is superior to other methods of fair and efficient adjudication of this litigation.

111.     Most members of the Commission Class are unaware of their right to prosecute claims against Defendants.

112.     No member of the Commission Class has a substantial interest in individually controlling the prosecution of a separate action, but if they do, they may exclude themselves from the class upon receipt of notice under Federal Rule of Civil Procedure 23(c).

## COLLECTIVE ACTION ALLEGATIONS

113.     Plaintiffs bring their Fourth and Fifth Causes of Action pursuant to 29 U.S.C. § 216(b) and Md. Code, Lab. & Empl. § 3-501 *et. seq.*, respectively, as a collective action on behalf of the following collective:

> All individuals who were formerly employed by Defendant Nationwide Motor Sales Corp. doing business as Nationwide Infiniti of Timonium, Nationwide Kia, Nationwide Nissan, and Nationwide Motor Saless aka Nationwide Pre-Owned, who were classified as exempt from FLSA overtime requirements, and who were separated from employment on or after May 4, 2017.

114.     Plaintiffs are similarly situated to all members of the Collective because Plaintiffs and Collective members were the victims of a single ongoing decision, policy, or plan that violated the law.

115.     The causes of action of all Collective members with regard to the FLSA and MWPCL violations are identical.

116.    Defendants will assert substantially identical defenses to the claims of all Collective members.

**COUNT I**
**Accounting**

117.    The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

118.    Defendants were under a legal duty to accurately account for costs and revenue in calculating the commissions to be paid to Plaintiffs and the Commission Class.

119.    When Plaintiffs and the Commission Class earned commissions, Defendants were compelled to render such account, either explicitly or by paying the earned commission in full based on that account without improper reductions.

120.    Defendants, by failing to disclose the costs and revenue used in calculations and by underpaying commissions, failed to render such account.

121.    Plaintiffs, on behalf of themselves and the Commission Class, request that Defendants be ordered to fully and completely account for all commissions to which any of the above-named Reductions or any other similar reductions were applied, all monies that were paid to Plaintiffs and putative class members, all deductions made from those monies, and all sums due to Plaintiffs and putative class members during the relevant period.

122.    Defendants were also under a legal duty to accurately account for hours worked, advances paid, and wages in calculating and paying Plaintiffs and the Collective their final paychecks.

123.    Defendants, by making false or improper deductions and failing to pay Plaintiffs and the Collective the full amounts of their final paychecks, failed to render such account.

124. Plaintiffs, on behalf of themselves and the Collective, request that Defendants be ordered to fully and completely account for all deductions and all wages earned and paid to Plaintiffs and the Collective during each Plaintiffs' and Collective member's final pay period, and all sums due to Plaintiffs and the Collective as a result of any underpayment.

## COUNT II
### Maryland Wage Payment and Collection Law
### (Plaintiffs and the Commission Class)

125. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

126. The commissions earned by Plaintiffs and the Commission Class are "wages" for purposes of the Maryland Wage Payment and Collection Law (MWPCL), Md. Code, Labor & Employment § 3-501.

127. Defendant NMSC is or at times relevant hereto was the employer of all Plaintiffs and Commission Class Members under the MWPCL.

128. The Individual Defendants, as sole owners with operational control over NMSC, including control over the nature and structure of commissions and the Reductions, constitute employers for purposes of the MWPCL, and are jointly and severally responsible for the wages owed to Plaintiffs and the Commission Class under the MWPCL.

129. Defendants had a duty to pay wages to Plaintiffs and the Commission Class as agreed by all parties.

130. Defendants failed to uphold this duty in violation of the MWPCL.

131. This failure subjects Defendants to the MWPCL's treble damages provision, for which all Defendants are jointly and severally liable.

## COUNT III
### Unjust Enrichment
### (Plaintiffs and the Commission Class)

132.    The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

133.    Plaintiffs and the Commission Class expected to receive the share of the profits from each vehicle sale set forth in the Pay Plans.

134.    Plaintiffs and the Commission Class did not receive the expected share; instead, part of their expected share was retained by Defendants as a result of the Reductions.

135.    The amount retained by Defendants as a result of the Reductions constitutes a benefit conferred upon Defendants by Plaintiffs and the Commission Class.

136.    Defendants, who created the Reductions, were aware of and appreciated this benefit.

137.    Defendants' acceptance or retention of the benefit, given Plaintiffs' and the Commission Class's entitlement to that benefit as part of their negotiated commissions, is inequitable.

## COUNT IV
### Fair Labor Standards Act
### (Plaintiffs and the Collective)

138.    The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

139.    Plaintiffs and the Collective are employees entitled to the protection of the FLSA.

140.    Defendants are employers covered by the FLSA.

141.    The FLSA entitles employees to overtime compensation of not less than one and a half times their regular pay rate for all hours over 40 worked in any given week. 29 U.S.C. § 207(a)(1).

142.     The only relevant exception to this requirement is that employees are exempt if 1) they make more than one and a half times the federal minimum wage and 2) more than half of their compensation comes from commissions. *See* 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

143.     In the alternative, members of the Collective who were in supervisory positions were exempt if they made $455 per week (prior to January 1, 2020) or $684 per week (after January 1, 2020).

144.     Defendants added false or improper deductions to Collective members' final paychecks, and otherwise failed to pay the full amount of Collective members' final paychecks. In doing so, Defendants paid Collective members less than one and a half times the minimum wage, did not pay overtime, and did not pay supervisory employees at least $455 or $684 per week.

145.     Defendants' failure to pay overtime wages to Collective members, while also failing to pay more than one and a half times the minimum wage on Collective members' final paychecks and failing to pay supervisory employees at least $455 or $684, violates the minimum wage provisions and overtime provisions of the FLSA.

<u>**COUNT V**</u>
**Maryland Wage Payment and Collection Law**
**(Plaintiffs and the Collective)**

146.     The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

147.     The base pay and commissions earned by Plaintiffs and the Collective are "wages" for purposes of the Maryland Wage Payment and Collection Law (MWPCL), Md. Code, Labor & Employment § 3-501.

148.     Defendant NMSC is or at times relevant hereto was the employer of all Plaintiffs and Collective Members under the MWPCL.

149.    The Individual Defendants, as sole owners with operational control over NMSC, including control over the payment of wages and any deductions from paychecks, constitute employers for purposes of the MWPCL, and are jointly and severally responsible for the wages owed to Plaintiffs and the Collective under the MWPCL.

150.    Defendants had a duty to pay wages to Plaintiffs and the Collective as agreed by all parties and in compliance with federal and Maryland state minimum and overtime laws.

151.    Defendants failed to uphold this duty in violation of the MWPCL.

152.    This failure subjects Defendants to the MWPCL's treble damages provision, for which all Defendants are jointly and severally liable.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all individuals similarly situated, request that judgment be entered against Defendants as follows:

1.    On the First Cause of Action, Plaintiffs request a judgment be entered against Defendants and in favor of Plaintiffs, the Commission Class, and the Collective, for the full amount due and owing or to become due and owing to Plaintiffs, the Commission Class, and the Collective, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

2.    On the Second Cause of Action, Plaintiffs seek an award for compensatory damages for Defendants' failure to pay wages under the MWPCL to Plaintiffs and the Commission Class, in an amount to be proven at trial and multiplied as required by law, and for such civil penalties, including reasonable attorney's fees, permitted by law and such other and further relief as the Court deems just and proper under the circumstances.

3.    On the Third Cause of Action, Plaintiffs seek an award for compensatory damages for the commissions Defendants failed to pay to Plaintiffs and the Commission Class, in an amount

to be proven at trial, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

4.       On the Fourth Cause of Action, Plaintiffs seek 1) an order authorizing the litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and facilitating prompt notice of this litigation to all potential Collective members, and 2) liquidated damages and penalties to the fullest extent permitted under the law, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

5.       On the Fifth Cause of Action, Plaintiffs seek an award for compensatory damages for Defendants' failure to pay wages under the MWPCL to Plaintiffs and the Collective, in an amount to be proven at trial and multiplied as required by law, and for such civil penalties, including reasonable attorney's fees, permitted by law and such other and further relief as the Court deems just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiffs, on behalf of themselves, the Commission Class, and the Collective, demand a trial by jury of any and all claims so triable.

_____/s/_____

By: Brian J. Markovitz

Respectfully submitted this 4th day of May, 2020,

_____/s/_____

Brian J. Markovitz, # 15859
Nicholas N. Bernard, #20743
Joseph Greenwald & Laake, P.A
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 (tel.)
(301) 220-1214 (fax)
*Co-Counsel for Plaintiffs and Class Members*

_____/s/_____
Jonathan Rudnick, *pro hac vice pending*
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Avenue, Suite 204
Tinton Falls, New Jersey 07724
(732) 842-2070 (tel.)
(732) 879-0213 (fax)
*Co-Counsel for Plaintiffs and Class Members*