# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 18, 2020

LETTER TO COUNSEL

RE:    *Michael Coady, et al. v. Nationwide Motor Sales Corp., et al.*;
       Civil No. SAG-20-1142

Dear Counsel:

Plaintiffs Michael Coady, Charles Jenkins, Lawrence Holmes, William Freburger, and Russell J. Macey, Jr. (collectively "Plaintiffs") filed this class and collective action suit against Defendants Nationwide Motor Sales Corporation ("Nationwide"), William H. Schaefer, Jr. and Brandon E. Schaefer (collectively "Defendants"), alleging unjust enrichment and failure to comply with wage payment laws. Currently pending is Defendants' Motion to Dismiss the Action and Compel Arbitration ("the Motion"). ECF 22. I have reviewed the motion, the supplemental filings, and the opposition and reply. ECF 26, 27, 30, 31, 32, 33, 36.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Defendants' motion to compel arbitration will be denied.

## Factual Background

Plaintiffs worked at one of four car dealerships operated by Nationwide and were compensated in whole or in part by commissions on vehicle or service sales. ECF 10 (Amd. Compl.) ¶¶ 1-3. Plaintiffs allege that, beginning at least as early as 2013, Defendants began inflating the costs associated with the sale of vehicles and services in the computer system, to reduce the net profit on each sale. *Id.* ¶ 4. Because employees' commissions are calculated using the net profit, Plaintiffs posit, Plaintiffs and their proposed Commission Class have been underpaid millions of dollars in earned commissions. *Id.* ¶ 5.

Additionally, Plaintiffs allege that Nationwide maintained a policy or practice of improperly withholding monies from an employee's paycheck after learning that the employee planned to leave the company. *Id.* ¶ 7. "For instance, Defendants sometimes claimed that prior commission payments were 'advances' on the employee's paycheck and reduced the paycheck by the amount of these 'advances.'" *Id.* Plaintiffs allege that, as a result of the wrongful deductions,

---

[1] The parties each filed supplemental filings relating to the incorrect AAA address listed in the Employee Manual. Because that issue is immaterial to the disposition of this Motion, the pending Motion for Leave to File Surreply, ECF 33, also will be denied.

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 2

they were paid less than the amount required to be paid under federal minimum wage laws for the pay periods corresponding to those paychecks. *Id.* ¶ 9.

Nationwide issues its employees an Employee Manual, which, in relevant part, contains the following language (the "Arbitration Provision"):

AGREEMENT TO SUBMIT ALL EMPLOYMENT DISPUTES TO ARBITRATION

1) *Submission to Arbitration:* **I EXPRESSLY AGREE THAT, EXCEPT AS OTHERWISE PROVIDED BELOW, <u>ANY CLAIM</u> THAT ARISES OUT OF, OR RELATES TO, MY EMPLOYMENT OR TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, <u>MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION.</u>**

   <u>This includes, but is not limited to</u>, any claim arising out of; (i) any statute or regulation, including any claim of discrimination; (ii) any tortious conduct; (iii) any breach of contract; (iv) any dispute concerning the arbitrailbility [sic] of any claim; (v) any claim for unfair competition, including violation of any restrictive covenant relating to non-competition, non-solicitation of customers and/or employees, and/or improper use or disclosure of confidential information or trade secrets (<u>but not</u> efforts to obtain injunctive relief relating to such claims); and (vi) any claims made against any company affiliated with the Company or against any stockholder, officer, director, manager, or supervisor of the Company or of any such affiliated company.

2) *Pre-Arbitration Efforts to Resolve Disputes:* Before any dispute may be submitted to arbitration under this Agreement, the aggrieved party <u>must and shall give written notice</u> to the other party <u>of the existence of a dispute within 60 days</u> of the date on which the party first know [sic], or should have known, of the facts that created the basis for the dispute; <u>otherwise, the claim shall be void and deemed waived</u>. The parties will then make a good faith effort to resolve any dispute covered by this Agreement on an informal basis.

3) *Binding Arbitration:* If a covered dispute is not resolved as provided in paragraph 2 above, the aggrieved party shall submit the dispute for resolution by final binding arbitration. Writing a letter to the American Arbitration Association (AAA), 1150 Connecticut Avenue, N.W., Washington D.C. 20036, requesting arbitration, and sending a copy of the letter to the other party, will constitute submission of the dispute. The arbitration will be conducted under the then-current Employment Dispute Resolution Rules (Rules) of the AAA, <u>provided however</u>, the arbitrator shall also allow for, and shall have the express authority to allow for, appropriate discovery and exchange of information before a hearing.

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 3

4) *The Limits and Procedures:* The aggrieved party <u>must submit the dispute to arbitration</u> as provided in paragraph 3 above, <u>within 180 days</u> of the date on which that party first knew or should have known of the facts that created the basis for the claim; <u>otherwise, the claim shall be void and deemed waived</u>.

5) **By my signature on the "Employee Handbook and Operating Procedures" Acknowledgement Receipt, I confirm that I have read and understand each of the four sections set forth above in this Agreement.[2]**

ECF 22-3 at 13.

Each Plaintiff signed a document entitled ACKNOWLEDGEMENT RECEIPT (an "Acknowledgement Receipt"), which read:

I, the undersigned (Employee), acknowledge receipt of the (Employer) **"Employee Handbook and Dealer Operating Procedures"** written publication and have read and understood all sections therein and especially:

. . .

- Agreement to submit All Employee Disputes to Arbitration
   . . .

I further acknowledge my obligation to read and comprehend its contents. I understand that this handbook is intended as an employee reference source regarding personnel policies, procedures and company benefits of the employer, but may not represent all such policies currently in effect. I further understand that the employer has the right, from time to time, to make and enforce new policies and procedures and to enforce, change, abolish or modify existing policies, procedures or benefits applicable to employees as it may deem necessary, with or without notice.

ECF 22-4 through 22-10.

The parties dispute whether Plaintiffs were, in fact, provided with a copy of the Employee Manual before signing the acknowledgement forms. *Compare* ECF 27-2 (Coady affidavit alleging that he never received a copy of the employee manual despite multiple requests) *with* ECF 31-5 (Lisa Flynn affidavit attesting that she personally gave Coady a full and complete copy of the manual at the time of his hiring, and that he never requested another copy).

---

[2] As just one example of the inartful drafting in Nationwide's documentation, the booklet it alleges it provided to its employees is titled, "Employee Manual," ECF 22-3, but the Acknowledgement Receipts refer to "the 'Employee Handbook and Dealer Operating Procedures' written publication." *See, e.g.*, ECF 22-3. All of the policies listed in the Acknowledgement Receipts, however, are found in the Employee Manual.

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 4

## Legal Standard

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment," and "[w]hether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *PC Const. Co. v. City of Salisbury*, 871 F.Supp. 2d 475, 477-78 (D. Md. 2012); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241-42 (4th Cir. 2017) (adopting the district court's use of the summary judgment standard). Because both parties premise their arguments on documents outside the pleadings, including affidavits on both sides regarding the issue of whether Plaintiffs were provided with the Employee Manual, this Court will consider documents outside the pleadings, and will apply the summary judgment standard. *See* ECF 22-2 through 22-10; ECF 27-1 through 27-5.

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Nationwide, as the moving party, bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). If Nationwide establishes that there is no evidence to support Plaintiffs' claim that the arbitration clause is inapplicable, the burden then shifts to Plaintiffs to proffer specific facts to show a genuine issue exists. *Id.* Plaintiffs must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Plaintiffs' position is insufficient; rather, there must be evidence on which a factfinder could reasonably find for Plaintiffs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. In applying the summary judgment standard, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## Analysis

Defendants seek to compel arbitration under the terms of the Arbitration Provision. ECF 22. Plaintiffs make a series of arguments in opposition: (1) that the Arbitration Provision does not constitute an agreement to arbitrate because Nationwide's promises are illusory; (2) that the Employee Manual was not provided to Plaintiffs; and (3) that there are an array of reasons that the Arbitration Provision is unenforceable, including (a) its unlawful reductions to statutorily mandated limitations periods; (b) its unreasonableness; (c) its impossibility; and (d) its unconscionability. ECF 27.

The Federal Arbitration Act ("FAA") favors the enforcement of written arbitration agreements between parties. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). However, Plaintiffs correctly note that before a court can properly compel arbitration, the

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 5

moving party must prove "a written agreement that includes an arbitration provision that purports to cover the dispute[.]"   *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500-01 (4th Cir. 2002) ("[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.").  Plaintiffs contest the existence of any such agreement.

As an initial matter, the parties disagree as to whether this Court or an arbitrator should determine whether the parties reached an agreement to arbitrate.  Despite Defendants' contention, this Court agrees with Plaintiffs that the FAA "requires that the district court – rather than an arbitrator – decide whether the parties have formed an agreement to arbitrate." *Berkeley Cty. Sch. Dist. v. Hub Int'l. Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).  The dispute in this case is squarely governed by that language from *Berkeley*, because the initial issue is not the scope of the arbitration agreement, but whether the parties reached a valid agreement to arbitrate in the first instance. Thus, the language in the Arbitration Provision providing "'any dispute concerning the arbitrability of any claim' must be resolved through arbitration" does not mean that the initial issue—whether the parties reached any agreement to arbitrate—should be presented to an arbitrator.  Enforcing the Arbitration Provision in that manner would put the cart before the horse.

Plaintiffs' first contention is that the Arbitration Provision is unenforceable, because Nationwide's promise to arbitrate was illusory.  They suggest that *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 148 (2003), makes "clear that a unilateral right to rescind or modify an arbitration agreement makes it illusory."  ECF 27 at 15.  In *Cheek*, the plaintiff received an offer of employment setting forth various conditions, including a summary of United's "Employment Arbitration Policy."  378 Md. at 141.  Cheek confirmed his acceptance in writing, stating that "[a]ll of the terms in your employment letter are amenable to me."  *Id.* at 142.  During his first day of employment, he received an Employee Handbook, which also contained a summary of United's Employment Arbitration policy.   *Id.*   That summary stated, "United HealthCare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice."  *Id.* at 142-43.  The Court of Appeals concluded, in relevant part:

> [T]he fact that "United Healthcare reserves the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice" creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate.  Indeed, the plain and unambiguous language of the clause appears to allow United to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because United can "revoke" the Policy "at any time."  Thus, we conclude that United's "promise" to arbitrate employment disputes is entirely illusory, and therefore, no real promise at all.

*Id.* at 149.  The Court of Appeals also rejected United's position that its employment or continued employment of Cheek constituted independent consideration for the Arbitration Policy, reasoning that, "To agree with United would place this Court in the untenable position of having to go beyond

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 6

the confines of the arbitration agreement itself and into an analysis of the validity of the larger contract, an inquiry which we cannot make." *Id.* at 152.

Distinguishing this case from *Cheek,* Defendants instead cite *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005). Hill involved an Arbitration Agreement signed by the employer and employee, specifically "a comprehensive six-page document which sets forth both Hill and PeopleSoft's obligations concerning arbitration." *Id.* at 542. In that Arbitration Agreement, "neither party reserved the right to modify the agreement's terms." *Id.* Separately, however, PeopleSoft had sent Hill an offer letter, which indicated that her employment would be subject to an Internal Dispute Solution (IDS) program, the third step of which was binding arbitration. *Id.* In the offer letter, PeopleSoft reserved the right to "change" the IDS program "without notice." *Id.* Rejecting Hill's contention that PeopleSoft's promise to arbitrate was illusory because it could make unilateral changes to the IDS program, the Fourth Circuit concluded that "the Arbitration Agreement is a specific, comprehensive document, setting forth all of the parties' rights and obligations concerning arbitration" and that it "on its face, unambiguously requires both parties to arbitrate." *Id.* at 544. The Fourth Circuit declined to read the provisions of the offer letter into the Arbitration Agreement, stating, "looking at the four corners of the separate Arbitration Agreement, the agreement contains no such illusory promise." *Id.*

This case falls squarely between *Cheek,* where the language permitting unilateral change existed within the arbitration provision itself, and *Hill,* where the language permitting unilateral change derived from an entirely separate letter offer. Here, the language giving Nationwide authority to change its policies without notice lies in two places: the same Employment Manual containing the Arbitration Provision, and the Acknowledgement Receipts signed by the Plaintiffs when they commenced their employment.

The facts of this case, then, are closest to those presented in *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582 (D. Md. 2013). Caire received an offer letter from his prospective employer that made no reference to arbitration. *Id.* at 585. On his first day of work, he received an employee handbook containing an arbitration provision. *Id.* at 585-86. Although he alleged that he was not given time to read the handbook and did not review the arbitration provision, he was required to sign a page of the handbook containing an "Acknowledgement of and Agreement with InforMed Arbitration Policy," along with a "Receipt and Acknowledgment of InforMed Employee Manual," which attested, "I have received and read a copy of the InforMed Employee Manual. I understand that the policies and benefits described in it are subject to change at the sole discretion of InforMed at any time." *Id.* at 586. After Plaintiff was terminated for "misconduct" and filed a charge of discrimination, InforMed filed a motion to compel arbitration pursuant to the terms of the agreement. *Id.* at 588-89.

Relying on *Cheek*, Judge Bennett rejected InforMed's position that Plaintiff's continued employment served as consideration for the arbitration agreement. *Id.* at 591-92. In addition, Judge Bennett found that "InforMed's promise to arbitrate is . . . illusory . . . because InforMed made no promise to arbitrate at all." *Id.* at 594. He reasoned that the arbitration policy was contained within the same employee handbook as the language which says that "the policies and

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 7

benefits described in it are subject to change at the sole discretion of InforMed at any time." *Id.* Judge Bennett expressly distinguished cases in which the employee handbook and arbitration provisions were contained in separate documents, finding that in *Caire*, "the arbitration provision is a policy described in the employee manual, therefore, the clause stating that such a policy is subject to change at the sole discretion of InforMed directly applies to the Arbitration Policy." *Id.*

    Judge Bennett's rationale is persuasive.  Like in *Caire,* the Arbitration Provision and the provision giving Nationwide unilateral authority to change or abolish existing policies are contained within the same Employee Manual.  Nationwide suggests that the "arbitration agreement" in the Employee Manual is outside the scope of the policies or procedures that can be modified or abolished by Nationwide, presumably because it is described as an "agreement" and not a "policy" or "procedure." [3]   ECF 31 at 9 n.4.  That contention is not supported by the plain language or structure of the Employee Manual, which includes the Arbitration Provision as just one of many items in an alphabetical list of topics, or the "Acknowledgement Receipt," which specifically lists the Arbitration Provision among several other provisions, right above the statement reiterating Nationwide's unilateral right to "enforce, change, abolish or modify existing policies, procedures, or benefits applicable to employees." *See, e.g.*, ECF 22-4.  Nothing in the language suggests that the sections of the Employee Manual with the word "agreement" in the caption was meant to be treated any differently from the remaining sections, with respect to the degree of modification authority afforded to Nationwide.  The Acknowledgement Receipt describes the Employee Manual as "intended as an employee reference source regarding personnel policies, procedures and company benefits of the employer," not as a collection of documents also incorporating independent agreements that cannot be modified. *Id.*  The occasional use of the word "agreement" in the Employee Manual, then, does not transform the Arbitration Provision into a separate agreement of the kind present in *Hill.*

    Finally, Defendants cite *Cherdak v. ACT, Inc.*, 437 F. Supp.3d 442, 456 (D. Md. 2020), for the proposition that because the provision permitting Nationwide to make unilateral changes is not contained within or directed at the Arbitration Provision itself, it cannot render Nationwide's promise to arbitrate illusory.  Here, however, the Arbitration Provision was specifically included in a list of topics directly preceding the statement reiterating Nationwide's right to unilaterally change the Employee Manual, suggesting that the unilateral change language was in fact "directed at" the Arbitration Provision.  ECF 22-4.  Regardless, *Cherdak* is not binding precedent, and this Court is not persuaded that Maryland law requires it to look exclusively at the specific paragraphs within the Arbitration Provision while disregarding other paragraphs, in the same Employee Manual, with general applicability to the entire agreement.  *Hill*, upon which *Cherdak* relies almost exclusively, involved a unilateral change provision *separate from* a standalone, six-page Arbitration Provision.  Thus, *Hill*'s focus on the "four corners of the Arbitration Agreement" to the exclusion of distinct unilateral change language makes sense since the Arbitration Agreement was quite literally a separate document.  Here, however, because no such separation exists, *Hill*'s reasoning loses strength, as *Caire* persuasively recognizes.

---

[3] Most sections of the Employee Manual simply provide substantive information, and are not expressly identified as a "policy," "procedure," or "agreement."  ECF 22-3.

*Coady v. Nationwide Motor Sales Corp.*
Civil No. SAG-20-1142
November 18, 2020
Page 8


In light of this Court's determination that Nationwide's purported agreement to arbitrate is illusory, it need not reach the issue of whether a genuine issue of material fact is presented by Plaintiffs' declarations that, despite their signed attestations that they received and read Nationwide's Employee Manual, they in fact never saw copies. Even assuming *arguendo* that Plaintiffs' affidavits are insufficient to undermine their prior signed statements to the contrary, Plaintiffs cannot be bound by a one-sided agreement lacking in adequate consideration. Thus, Nationwide's Motion to Compel Arbitration must be denied.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate Order follows.


Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge