**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
– Northern Division –

| | |
|---|---|
| MICHAEL COADY, *et al.* | |
| Plaintiffs, | |
| v. | Civil Action No. 1:20-cv-1142 SAG |
| NATIONWIDE MOTOR SALES CORP., *et al.* | |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

Dated: July 8, 2022

William J. Murphy (Bar No. 00497)
John J. Connolly (Bar No. 09537)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
410 332 0444 (Phone)
410 659 0436 (Fax)
wmurphy@zuckerman.com
jconnolly@zuckerman.com

Robert Gittins (Bar No. 28240)
Eccleston and Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
410 752 7474 (Phone)
410 752 0611 (Fax)
gittins@ewmd.com

*Attorneys for Defendants*

I.    INTRODUCTION ............................................................................................1

II.   THE ALLEGED FLSA CLAIMS AT ISSUE.............................................4

      A.   Plaintiffs' Allegations and Declarations.........................................4

      B.   Nationwide's Evidence and Employment Records. ........................6

           1.   Michael Coady ....................................................................7

           2.   Larry Holmes........................................................................9

           3.   Charles Jenkins..................................................................10

           4.   Russell Macey ....................................................................12

           5.   William Freburger ..............................................................13

           6.   Alan McMillen ...................................................................14

           7.   Samuel Maiocco .................................................................15

           8.   Sheureka Avent ..................................................................16

           9.   James Schultz .....................................................................17

III.  ARGUMENT...............................................................................................17

      A.   The Legal Framework of Plaintiffs' Motion for Conditional Certification. ...................17

      B.   Nationwide Is Entitled to Rely On the Exemption in § 213(b)(10)(A). ..........................18

      C.   The Court Should Deny the Motion for Conditional Certification. ...............................21

           1.   The bar for conditional certification is meaningful if not high, and courts
                regularly deny conditional certification. ..................................................21

           2.   Nationwide has not "admitted" to a common policy that violates the FLSA,
                and the facts establish no such violations.................................................23

           3.   The record does not establish a consistent violation of the relevant
                "minimum wage," which for all potential plaintiffs is $7.25 per hour,
                pursuant to § 213(b)(10)(A). ..................................................................24

4. Conditional certification is not warranted because Plaintiff's proposed class would require numerous "individual determinations." ............................................25

5. Plaintiffs' cases are inapposite because they address complete failures to issue final paychecks. ...........................................................................................26

D. If the Court Grants Conditional Certification, It Should Substantially Revise Plaintiffs' Proposed Notice...............................................................................................28

1. The Notice Should Be Sent Only to Persons Who Could Have Claims that Are Within the Two-Year Limitations Period..........................................................28

2. The Court Should Not Authorize Notice by Text Message or Require Nationwide to Produce Former Employee Telephone Numbers. ..........................30

3. Any notice should not refer to Plaintiffs' non-FLSA claims. .................................32

4. Any notice should make other changes to reflect the realities of the FLSA claim and the obligations of opt-in plaintiffs in the litigation................................33

IV. CONCLUSION..............................................................................................................35

Defendants Nationwide Motor Sales Corporation, William H. Schaefer, Jr., and Brandon E. Schaefer, by their undersigned attorneys, hereby oppose the Plaintiffs' Motion for Conditional Certification of certain claims in this case as a "collective action" pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

I.   **INTRODUCTION**

Defendants recognize that at the conditional certification stage the Court typically "makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *See, e.g., Brooks* v. *Stevenson Univ., Inc.*, No. SAG-19-1159, 2020 WL 247307, at *1 (D. Md. Jan. 16, 2020) (citation and quotations omitted). Defendants also acknowledge that this Court has often stated that the plaintiffs' burden in supporting a request for conditional certification is a "relatively modest factual showing," which may rely on affidavits or other means to show that a group of potential opt-in parties are "similarly situated" to the named plaintiffs, and were the "victims of a common policy, scheme, or plan that violated the [FLSA]." *Butler v. DirectSAT USA, LLC,* 876 F. Supp. 2d 560, 566 (D. Md. 2012) (citations omitted).

But in this case, Defendants can show that there is no "common policy, scheme or plan" that violated the minimum wage requirements of the FLSA. Fundamentally, in their Complaint and in their Motion, Plaintiffs have ignored the impact of a clear statutory exemption from the overtime requirements of the FLSA that renders their claims deficient as a matter of law. Under 29 U.S.C. § 213(b)(10)(A), none of the named Plaintiffs nor any members of their proposed collective is entitled to overtime wages because they are all sales and service personnel working for an automobile dealer. The FLSA requires that those employees be paid the federal minimum wage for the hours they work, and nothing more. Moreover, even accepting some of the factual averments in the Complaint and in the declarations filed in support of the pending Motion,

Plaintiffs have not shown that any of the named Plaintiffs, the three additional former employees who have filed Consents to join in this action, or the three additional former employees named by Plaintiffs in their supporting declarations, were victims of a common policy, scheme or plan that violated the FLSA.

In fact, as demonstrated in the supporting Declaration of Brandon E. Schaefer, and the pay plans and payroll records attached thereto, all of these former employees of Nationwide (with the possible exception of Mr. McMillen) were paid consistently with the minimum wage requirements of the FLSA throughout their employment with Nationwide, including with respect to their last paychecks. And Mr. McMillen's last paycheck was withheld because he had failed to complete his responsibilities with respect to several of his service department customers, leading to unwarranted expenses paid by Nationwide to third party vendors.  That situation was unique to Mr. McMillen's role as a service department manager. It was not at all related to the (meritless) FLSA claims of the other Plaintiffs and former employees, and it was clearly not a result of any common policy, scheme or plan in violation of the FLSA.

In similar circumstances, where the defendant had made factual submissions and demonstrated to the Court's satisfaction that conditional certification should be denied for lack of a common policy in violation of the FLSA, the Court determined that the plaintiff had "failed to carry his burden to establish that this Court should facilitate class-wide notice in order for this case to proceed as a collective action." *Brianas* v. *Under Armour, Inc*., No. RDB-17-02928, 2018 WL 2184448, at *5 (D. Md. May 11, 2018). The *Brianas* Court was "mindful that 'the courts have a responsibility to avoid the "stirring up" of litigation through unwarranted [class] solicitation.'" *Id.* (citation omitted).

In addition to the blatant legal and factual flaws in Plaintiffs' theories of recovery under the FLSA, which are addressed below, Plaintiffs ask the Court to define the conditionally certified "collective" class as consisting of "[a]ll individuals who were previously employed and compensated in part or entirely on a commission basis by Defendants from May 4, 2017 to the present." *See* [Proposed] Order, ECF 60-8. This proposal broadens the class of former employees who would receive the notice far beyond those who would have potential FLSA claims. Moreover, the proposal implies that a three-year statute of limitations applies to the collective action, and that it is measured for all potential members of the collective from the date when the Complaint in this matter was filed. This definition of the proposed collective class ignores the basic fact that FLSA claims are subject to a two-year statute of limitations, which may be extended to three years but only for willful violations. *See* 29 U.S.C. § 255(a). More significantly, in a collective action under the FLSA, the statute provides that when the named claimant was not named as a party in the original complaint, that claimant's action is deemed to be commenced for limitations purposes "on the subsequent date on which such written consent [to join] is filed in the court in which the action was commenced." *See* 29 U.S.C. § 256(b). Given the time that has passed since the Complaint was filed, the operative date for notices to any proposed collective members of the FLSA class should be defined as those commissioned sales employees who last were employed by Nationwide within two years of the filing of the motion or the date the notice is sent (if the collective is conditionally certified), or within three years from that date in the unlikely event the Court determines that any alleged violation of the FLSA might be construed as "willful."

Under the unique circumstances posed by the FLSA claims in this case, and especially given Plaintiffs' failure to recognize the import of the statutory exemption in § 213(b)(10)(A), the

Motion for Conditional Certification should be denied. If granted, the notice should be substantially modified to conform with the requirements of the FLSA.

## II.    THE ALLEGED FLSA CLAIMS AT ISSUE

### A.    Plaintiffs' Allegations and Declarations.

The Amended Complaint in this action named three plaintiffs, each of whom is a former sales employee of Nationwide. Two of those former employees, Michael Coady and Larry Holmes, served as Directors of Nationwide's Sales departments for pre-owned and used vehicles. *See* ECF 10 (Am. Compl.) ¶¶ 77, 83 (Coady); ¶¶ 96, 98 (Holmes). The third, Charles Jenkins, was employed as Nationwide's Pre-Owned Internet Sales Manager during most of his tenure with Nationwide, *see id.* ¶ 88, and he was last employed with Nationwide as a commissioned salesperson during a two-month period in 2019. *Id.* ¶ 87.

After the Complaint was filed, three additional former employees filed declarations and consents seeking to join in this action as a "collective" under the FLSA. Russell Macey was employed as a commissioned salesperson with Nationwide Infiniti, and later returned to Nationwide as the Internet Sales Manager for Nationwide Nissan. *See* ECF 23. He has asserted that during his last month with Nationwide in April and May 2020 he "was unable to sell any vehicles due to the impact of the COVID-19 pandemic," and as a result earned no commissions. *Id.* at ¶ 13. William Freburger was a used car salesperson with Nationwide Pre-Owned, who left Nationwide's employ in January 2019. *See* ECF 14. Alan McMillen was the Service Manager for Nationwide Nissan and Kia for 20 months between January 2020 and September 2021. *See* ECF 45. As will be shown below, as a service manager, Mr. McMillen was not compensated based on vehicle sales prices, despite allegations to the contrary in his Declaration and Notice of Consent. *See id.* ¶¶4-5.

All six former employees who have joined in this action were paid in part on the basis of sales commissions or, in the case of Mr. McMillen, bonuses based on profitability of the service department. And all of them have asserted that deductions were taken from their final paychecks with Nationwide, which allegedly reduced their wages for the last two weeks they worked below the federal minimum wage of $7.25 per hour set by § 206 of the FLSA, or below the minimum overtime pay set by § 207 of the FLSA. But none of these former employees of Nationwide was subject to the FLSA's overtime rules. They were exempt from overtime pay pursuant to § 213(b)(10)(A), which provides that: "The provisions of section 207 of this title [the overtime provisions] shall not apply with respect to . . . any salesman, partsman, or mechanic  primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." As will be further demonstrated below, all sales and service department employees of Nationwide clearly are subject to that statutory exemption from the overtime rules. [1]

Three other employees have been specifically referenced in the Declarations of Mr. Coady and Mr. Jenkins, filed in support of this Motion, as being similarly situated to the named Plaintiffs for purposes of the FLSA claim and the alleged "collective." *See* ECF 60-2 (Coady Decl.) ¶¶ 6-7 (identifying Sheureka Avant, Sam Maiocco, and Plaintiff Jenkins as former employees of Nationwide whose last paychecks "came up very short" or "were also around $100.00 for working two full weeks"); ECF 60-3 (Jenkins Decl.) ¶ 6 (identifying James Schultz and plaintiff Holmes

---

[1] Although the Plaintiffs make passing reference to the exemption for supervisory or executive employees set out in § 213(a)(1) in their Complaint and in their moving papers, they fail to mention or discuss the impact of § 213(b)(10)(A). The latter provision of the FLSA exempts *all* automobile sales and service personnel from the overtime requirements – and the failure to address it is a glaring deficiency in Plaintiffs' claim and in the Motion for Conditional Certification.

as former employees of Nationwide who complained that their last paychecks were "wrong" or "short" of the correct amounts). As will be demonstrated below, none of these factual allegations is correct. Nationwide's payroll records for these three former employees demonstrate that none was paid less than the federal minimum wage for their last pay periods working for Nationwide.

The same is clearly true for five of the six former employees who filed or who later consented to join in this action. They all received final paychecks from Nationwide that provided them with compensation in excess of the federal minimum wage of $7.25 per hour for the hours they worked. Mr. McMillen's last paycheck was withheld by Nationwide for reasons unique to his duties as a service manager. That action was not taken as part of a common policy, scheme, or plan. And the documentary evidence summarized below shows that for all six Plaintiffs, to extent any deductions were taken from their last paychecks, the circumstances for each one was entirely different from the others, and five of the six received final paychecks in excess of the federal minimum wage for the hours they worked.

**B.      Nationwide's Evidence and Employment Records.**

Attached hereto as Exhibit A is a Declaration of Brandon E. Schaefer, the General Manager and part owner of Nationwide and an individual defendant in this action. Mr. Schaefer has worked for Nationwide for 28 years and had oversight responsibilities over all named Plaintiffs and putative class members. Ex. A. ¶ 1. Mr. Schaefer was involved in the hiring and supervision of each of the three named Plaintiffs in this action, as well as the three former employees who filed Declarations and Notices of Consent to join in this action after the initial Complaint was filed. *Id.* ¶ 4. He also was involved in hiring and/or supervising the three additional former employees of Nationwide who were identified by Plaintiffs Coady and Jenkins in declarations they recently filed in support of their Motion for Conditional Certification. *Id.* And Mr. Schaefer has access to

6

employment and payroll records of the former Nationwide employees who have been identified as plaintiffs or potential plaintiffs in this action.[2]

Because Plaintiffs' motion for conditional certification alludes to alleged failures to pay commissions due, Mr. Schaefer's declaration provides a comprehensive summary of Nationwide's practices with respect to commission payments, as well as the employment agreements for each of the nine former employees identified as plaintiffs or potential plaintiffs. Nationwide contends, however, that Plaintiffs' allegations about alleged failures to pay full commissions are mostly irrelevant to the motion for conditional certification. The sole issue on this motion is whether Plaintiffs have demonstrated a basis to adjudicate their FLSA claim as a collective action, and the FLSA claim turns solely on whether Nationwide made reductions from employees' last paychecks pursuant to a common policy, scheme, or plan that had the effect of reducing their pay below the minimum threshold of $7.25 per hour. The facts relevant to that issue are summarized below.

### 1. Michael Coady

Mr. Coady was hired as the Director of Nationwide's Pre-Owned Sales Department early in April, 2018. Ex. A ¶ 6. After he was hired, Mr. Coady took on supervisory responsibilities for Nationwide's used car operations. During his tenure with Nationwide Mr. Coady supervised a sales staff of approximately 7 or 8 pre-owned sales personnel and he had the discretion to approve the sales of used Nissans and other pre-owned vehicles without any supervision from other managers. *Id.* Mr. Coady executed an employment Pay Plan. Coady Ex. 1 at 010. The Nationwide

---

[2] The relevant employment records (conditionally filed under seal) are exhibits to Mr. Schaefer's Declaration and are referred to therein by the name of the relevant employee and the number of the exhibit for that employee; e.g., "Coady Ex. 1." The exhibits are sorted by alphabetical order per employee, and then by number of the exhibit. For ease of reference herein, however, all these employment-record exhibits have been consecutively Bates-numbered from 001 through 353, and page citations herein are to the Exhibit name and number and then to the Bates numbered page; e.g., "Coady Ex. 1 at 010" identifies the Bates numbered page for the first Coady exhibit, which is the 10th page of the full exhibit package.

Pre-Owned Pay Plan provided that Mr. Coady's salary would be offset by various commission chargebacks and other potential costs or expenses. Ex. A ¶ 8; Coady Ex. 1 at 010.

Mr. Coady was discharged for performance reasons effective August 25, 2018. Ex. A ¶ 13. His final paycheck was in the gross amount of $387.63 and was delivered to him on September 14, 2018. *Id.*; Coady Ex. 3 at 073-075. This reduction in Mr. Coady's pay resulted from the impact of repairs and chargebacks already experienced by the Pre-Owned and Nissan used car departments and an estimate of future chargebacks against commissions for which Mr. Coady already had been paid.  Nationwide's records reflect that the estimate of future chargebacks applied to Mr. Coady's final paycheck was actually less than his applicable percentage (7%) of the chargebacks Nationwide experienced during the relevant period. *Id.*

More importantly for purposes of this Motion, Nationwide's payroll records reflect that Mr. Coady worked 46.87 hours during his last pay period and received gross wages of $387.63 – equivalent to $8.27 per hour – an amount in excess of the federal minimum wage. Ex. A ¶ 14; Coady Ex. 1 at 072. In fact, in the Complaint, Plaintiffs concede that Mr. Coady was paid approximately $8.61 per hour for his last pay period, but contend (erroneously) that this was below the wage required by the FLSA exemption to which he was subject.[3] ECF 10 (Am. Compl.) ¶ 85. Plaintiffs are wrong about the law because they have disregarded the impact of § 213(b)(10)(A), and Mr. Coady does not have a valid FLSA claim.

---

[3] Plaintiffs contend that the applicable exemption is that set forth for executive, administrative and professional employees in § 213(a)(1) of the FLSA, for which the applicable regulations require that such employees receive a minimum salary of at least $455 per week (increased in 2020 to $684 per week). See 29 C.F.R. § 541.600(a). But Nationwide need not rely on that exemption for Mr. Coady, or the other sales supervisors who have joined in this action, because they are covered by the separate exemption in § 213(b)(10)(A), for whom there is no comparable minimum salary requirement.

### 2.   Larry Holmes

Mr. Holmes preceded Mr. Coady as the Pre-Owned Director of used car sales for Nationwide, but he was only employed by Nationwide for a very short period, starting February 6, 2018. Ex. A ¶ 15. Mr. Holmes had supervisory responsibilities comparable to Mr. Coady's. *See id.* ¶ 16. His executed Pay Plan bears Mr. Schaefer's handwritten notes detailing the elements of his compensation, including that he would be paid a fixed salary of $1,000 per week and that he would receive guaranteed compensation of at least $8,000 a month for his first 90 days on the job. Holmes Ex. 1 at 111-112. Mr. Schaefer explained that Mr. Holmes would receive 7% of the total gross profits on cars sold under his supervision and approval, and that his compensation would be offset by a percentage of the chargebacks and the costs of repairs, but that those deductions would not go into effect for 90 days. Ex. A ¶ 15. As it turned out those chargeback provisions never went into effect for Mr. Holmes because he was terminated for poor performance in early April 2018 after only about two months with Nationwide. *Id.* ¶ 19.

During his last pay period, Mr. Holmes received gross pay of $3,888.77, including a prorated fixed salary of $1,200 for the one week he worked, plus bonus compensation of $2,688.78. *Id.*; Holmes Ex. 4 at 135-36, 142. In the Complaint, Plaintiffs allege that Mr. Holmes' pay for his final period of work with Nationwide was below the federal minimum wage. ECF 10 ¶ 100. This assertion is incorrect. Nationwide's payroll records reflect that Mr. Holmes worked 66.4 hours during his last pay period and he received gross compensation of $3,888.77—for an average hourly wage of more than $58 per hour.  Ex. A ¶ 19; Holmes Ex. 4 at 135.

The Complaint also alleges that Mr. Holmes' "final paycheck was improperly reduced by several hundred dollars in false or improper reductions," ECF 10 ¶ 100, and Mr. Jenkins has contended in his declaration in support of the Motion for Conditional Certification that Mr. Holmes (who is now deceased) had complained to Mr. Jenkins that Holmes's last paycheck was short of

the full amount he was owed. ECF 60-3 (Jenkins Decl.) ¶ 6. These assertions also are not correct. Other than payroll withholding for federal, state and Medicare taxes, and the minimal costs of a pre-employment drug test (that Mr. Holmes agreed could be deducted from payroll), Mr. Holmes' final paycheck was reduced by only two charges totaling $786.85. Ex. A ¶ 20; Holmes Ex. 4 at 135. The first reduction of $536.85 was for new tires and other servicing that Mr. Holmes had requested Nationwide's service department to perform on his personal vehicle, and for which Mr. Holmes had not paid as of the date of his termination. Ex. A ¶ 20; Holmes Ex. 4 at 139. The second reduction of $250, also authorized, was based on the failure of one of his approved customers to pay the full amount of a promised down payment on a purchase approved by Mr. Holmes as the Pre-Owned Director. Ex. A ¶ 20 ; Holmes Ex. 4 at 141. But even after considering these deductions, Mr. Holmes still was paid in excess of $46 per hour during his last pay period. Like Mr. Coady, Mr. Holmes does not have a valid FLSA claim.

### 3.    Charles Jenkins

Mr. Jenkins worked for Nationwide and quit or was terminated on multiple occasions between 2015 and 2019. Ex. A ¶ 22. For most of the time that Mr. Jenkins worked at Nationwide he was employed as an Internet Sales Manager or the Pre-Owned Internet Manager. *Id.* In that capacity Mr. Jenkins was paid a fixed salary of $2,000 or $3,000 per month plus a fixed sum for every internet customer that Mr. Jenkins contacted who arrived for an appointment at the dealership, and an additional fixed amount if the customer purchased a vehicle. *Id.* Mr. Jenkins also was entitled to additional bonuses depending on the achievement of set goals of a certain number of internet sales completed each month. *See id.*; Jenkins Exs. 1-4 (Bates pages 143-146).

Unlike Mr. Coady and Mr. Holmes, Mr. Jenkins' compensation as the Pre-Owned Internet Manager was not based on the percentage of the gross profits for the vehicles that he was involved in selling, nor was it subject to the costs of subsequent repairs and chargebacks. Ex. A ¶ 23.

Moreover, Mr. Jenkins was not paid a profit-based commission on Nationwide's internet sales, and his compensation during the period he was employed as the Pre-Owned Internet Manager was not reduced by the imposition of what Plaintiffs refer to in paragraph 92 of the Complaint as "the Reductions." *Id.*

After being let go in April 2019, Mr. Jenkins reapplied to Nationwide in October of that year, seeking a position as a new and used car salesperson for Nissan and Kia. *Id.* ¶ 25. He was hired as a trainee on October 12, 2019. *Id.* During the period of his training, Mr. Jenkins was entitled to a base salary of $505 per week (calculated based on the then-applicable Maryland minimum hourly wage for a 50 hour week)[4] plus a unit bonus for sales of 4 or more vehicles per month. *Id.* ¶ 26; Jenkins Ex. 6 at 217.

Mr. Jenkins signed a new Pay Plan as a commissioned Nissan/Kia salesperson effective November 18, 2019. Ex. A ¶ 26; Jenkins Ex. 7 at 218. He agreed at that time to be paid solely on a commission basis. Ex. A ¶ 26. The Pay Plan also disclosed that Mr. Jenkins would be charged back to the extent that Nationwide experienced chargebacks on long term financing reserves, or as the result of cancellations of back end products sold to customers within 120 days of their purchase of a new vehicle. *Id.*; Jenkins Ex. 7 at 218.

Mr. Jenkins received a fixed salary of $1,010 per pay period during his trainee period between October 12, 2019 and November 16, 2019. Ex. A ¶ 27. He only worked for one additional week at Nationwide as a commissioned salesperson.[5] *Id.* In the Complaint, and in his declaration

---

[4] The Maryland Wage and Hour Laws, Md. Code Ann., Labor & Empl. § 3-401 *et seq*., also exempts from its overtime rules "a mechanic, partsperson, or salesperson who primarily sells or services automobiles . . . if the employer is engaged primarily in selling those vehicles to ultimate buyers and is not a manufacturer." *Id.* § 3-415(c)(2).

[5] During that week he sold just one vehicle and earned a commission of $256.47. Ex. A ¶ 27. His net pay for that period (after withholding taxes and health and insurance benefits) was $102.31. *Id.* Mr. Jenkins left Nationwide on or about November 27, 2019, and it does not appear that he ever picked up his final paycheck. *Id.* To the extent Mr. Jenkins would make an FLSA claim based on that paycheck, it would be distinct from the claims of each of the other Plaintiffs and members of the alleged "collective" because it would be based on his failure to sell enough

in support of the Motion for Conditional Certification, Mr. Jenkins contends that the last paycheck he received from Nationwide in November 2019 had been "short" because Nationwide had taken out of his pay a number of "fictitious deductions." ECF 10 (Am. Compl.) ¶¶ 60-61; ECF 60-3 (Jenkins Decl.) ¶ 9. These assertions are not correct. The last paycheck Mr. Jenkins received reflected gross pay of $926.37 because he had worked reduced hours during that period. Ex. A ¶ 28. He was paid his standard salary at the rate of $10.10 per hour for 91.72 hours. *Id.*; Jenkins Ex. 8 at 223. The only reductions reflected on his pay summary (other than for withholding taxes and benefits) were for the minimal costs of a pre-employment drug test (which he had agreed would be paid from his paycheck, Jenkins Ex. 9 at 227), and an account receivable of $48.30. Jenkins Ex. 8 at 223. Those minimal deductions did not reduce Mr. Jenkins' pay below the federal minimum wage of $7.25 per hour. *Id.* Mr. Jenkins does not have a valid FLSA claim.

### 4.     Russell Macey

Like Mr. Jenkins, Russell Macey worked for Nationwide during several different periods between 2011 and the spring of 2020. Ex. A ¶ 30. Mr. Macey's most recent period of employment with Nationwide lasted from January 3, 2020 through early May, 2020 as Internet Sales Manager for the Nissan dealership. *Id.*; Macey Ex. 3 at 239. His Pay Plan called for Mr. Macey to be paid a base salary of $500 per week (predicated on a 50 hour work week), plus bonus payments of $25 for every Internet appointment kept by a potential customer and $50 for every Internet customer who purchased a vehicle. In addition, if the Nissan store achieved its sales objectives Mr. Macey could earn a bonus of $2,000 per month. *Id.*

In his Declaration and Notice of Consent to join in this action, filed on August 10, 2020, Mr. Macey asserts that he earned no commissions and received no compensation for the last month

---

automobiles to receive commissions in excess of the federal minimum wage, rather than alleged improper deductions from his gross pay.

he worked at Nationwide. ECF 23 ¶ 13. This is not correct. Mr. Macey received commission compensation of $718 during his last two pay periods at Nationwide during which he worked only 35.7 hours. Ex. A ¶ 37; Macey Ex. 4 at 248-49. His gross wages during that period were still slightly in excess of $20 per hour. And those pay summaries do not reflect any deductions from Mr. Macey's gross pay other than standard payroll deductions. *Id.* Mr. Macey's reduced pay during his last month of employment was attributable to the impact of the COVID pandemic, and was not at all related to the reductions in pay experienced by Mr. Coady, Mr. Holmes, or Mr. Jenkins described above. Ex. A ¶ 37. Like the three named Plaintiffs, Mr. Macey does not have a valid FLSA claim.

### 5. William Freburger

Mr. Freburger was hired as a used car salesperson at Nationwide Pre-Owned effective August 27, 2018. Ex. A ¶ 38. His Pay Plan provided that he would be paid on a commission basis subject to certain chargebacks. *Id.*; Freburger Ex. 1 at 076. In his Declaration and Notice of Consent to join this action, filed on June 12, 2020, Mr. Freburger asserts he was paid on January 18, 2019 for his last pay period with Nationwide and that his paycheck was "extremely short." ECF 14 ¶ 10. He further alleged that he "was paid only $792.98 for my over ninety-four hours of work during that two week pay period, coming to less than $8.43 per hour." *Id.* Although that amount is in excess of the federal minimum wage for nonexempt employees, Mr. Freburger's declaration also is factually incorrect. On February 1, 2019, Mr. Freburger received, and he thereafter cashed, an additional paycheck from Nationwide, totaling $815.64, which was based on a calculation of the additional commissions he was owed as of the date he left Nationwide's employment. Ex. A ¶ 40; Freburger Ex. 3 at 109-110. As a result, Mr. Freburger was paid a total of a little more than $1600 for his last pay period with Nationwide, equivalent to approximately $17.00 per hour. Ex. A ¶ 40. There were no deductions taken from Mr. Freburger's last two

paychecks, other than standard payroll deductions and an account receivable of $24.15. *Id.* He has no valid FLSA claim.

### 6.    Alan McMillen

Mr. McMillen was hired as a Service Manager for Nissan and Kia commencing in January 2020. Ex. A ¶ 41. Mr. McMillen's Pay Plan was completely different from the Pay Plans of Nationwide sales personnel, including those for salespersons, internet sales managers, or new and used sales directors and managers. *Id.* Mr. McMillen was not paid commissions based on the sales of individual products or services, but rather received a bonus calculated as a percentage of the profits experienced by the Nissan and Kia service departments, along with the potential to earn monthly bonuses for above average customer satisfaction scores. *Id.*; McMillen Ex. 1 at 254. In addition, when he joined Nationwide Mr. McMillen received a guaranteed salary of $2,500 per pay period ($65,000 per year on an annualized basis). Ex. A ¶ 41. These guaranteed payments were extended for approximately six months, from early January through the pay period ending on June 13, 2020. *Id.* After that date, Mr. McMillen's pay was based strictly on the profitability of the two service departments. During that later period Mr. McMillen's average wage was approximately $33 per hour. *Id.* ¶ 46.

Mr. McMillen left Nationwide's employment without notice at the end of August 2021. Ex. A ¶ 43.  At that time, he had failed to ensure the receipt of complete payments from several of his service department customers, including payments for their use of rental cars during lengthy repairs and several bills for repair services provided by third party vendors of Nationwide. *Id.* When Mr. McMillen failed to account for these items in a timely fashion, Nationwide withheld his final paycheck of $4,273.34. *Id.* At that time, Nationwide calculated that Mr. McMillen's uncollected funds from his service customers totaled approximately $5,400. *Id.* Nationwide has since determined that some of the unreconciled charges have been paid by service department

customers, although approximately $2,500 still remains outstanding. *Id.* Through counsel, Nationwide has expressed its willingness to reimburse Mr. McMillen for the full amount of his last paycheck, but that offer has not been accepted. *Id.* To the extent that withholding Mr. McMillen's final paycheck pending the reconciliation of his service customer accounts might be in violation of the FLSA, his circumstances are unique, and his paycheck was not withheld pursuant to a common plan, scheme, or policy to violate the FLSA.

### 7.   Samuel Maiocco

Mr. Maiocco was identified by Mr. Coady in his recent declaration as someone who told Mr. Coady, after Mr. Maiocco left Nationwide, that his last paycheck was around $100 for working two full weeks, and he was very upset with the underpayment. *See* ECF 60-2 (Coady Decl.) at ¶ 7. That contention, based on hearsay, makes no sense.  Mr. Maiocco was the long time Infiniti Sales Manager. Ex. A ¶ 48. Mr. Schaefer hired him and worked closely with him over many years. *Id*. Mr. Maiocco left Nationwide voluntarily during the early days of the COVID pandemic. *Id.* The ADP payroll summary for Mr. Maiocco's last paycheck shows that Mr. Maiocco received gross pay of $1,293.84 during his last pay period. *Id.*; Maiocco Ex. 1 at 250. At the time, Mr. Maiocco (along with other Nationwide employees) had voluntarily agreed for 90 days to reduce his pay by 10% due to the onset of the COVID epidemic. *See* Ex. A ¶ 48; Maiocco Ex. 2 at 253. That reduced Mr. Maiocco's gross wages from $1,437.59 to $1,293.84. Ex. A ¶ 48. In addition, Mr. Maiocco's gross wages were reduced by $200. This amount was deducted because it reflected a rebate that Mr. Maiocco had offered to a customer on the purchase of a new Infiniti, and the rebate from the manufacturer never was paid to Nationwide. *Id.* Even after taking that small offsetting receivable into account, Mr. Maiocco was paid $13.35 per hour for his last pay period, an amount in excess of the federal minimum wage for nonexempt employees. *Id.* Mr. Maiocco has not brought a claim

against Nationwide, there is no reason to think he would do so, and in any event his last paycheck was in compliance with the minimum wage requirements of the FLSA.

### 8.   Sheureka Avent

Ms. Avent was employed by Nationwide as a Used Car – Pre Owned salesperson during a short period between August and October 12, 2018. Ex. A ¶ 49. Ms. Avent's Pay Plan provided her a salary of $250 per week, plus commissions as well as bonus payments for selling a certain number of cars per month. *Id.* Mr. Coady also identified Ms. Avent in his declaration as someone whose last paycheck from Nationwide "came up very short." ECF 60-2 (Coady Decl.) ¶ 6. On the contrary, Ms. Avent actually received four separate pay checks covering her last week of work at Nationwide. Ex. A ¶ 50. This resulted from the fact that several of the vehicles she sold had not been funded as of the date she left Nationwide's employ. *Id.* The ADP payroll records show that she worked 25.88 hours during the payroll period ending on October 20, 2018, Avent Ex. 2 at 003, and received a prorated salary of $150 plus commissions totaling an additional $649.88 in a paycheck dated October 26, 2018. *Id.* at 004. Thereafter, during the next three pay dates, Ms. Avent received additional commission checks of $447.12, $100.00, and $1,140.54 when the sales transactions on which those commissions were based were funded. *Id.* at 005-009. As a result, the gross amount of Ms. Avent's pay for her last shortened week of work was $2,487.54. Ex. A ¶ 50. Other than standard deductions for payroll taxes and benefits and an account receivable of $48.30, there were no reductions reflected on these paychecks. *Id.* Ms. Avent was paid approximately $96 per hour for her last pay period with Nationwide, an amount far in excess of the federal minimum wage for nonexempt employees. *Id.* Ms. Avent has been gone from Nationwide for nearly four years, has never asserted a claim, and her last paycheck does not reflect any violation of the FLSA.

**9.      James Schultz**

Mr. Jenkins' recent declaration states that Mr. Schultz complained about his last paycheck when he left Nationwide. ECF 60-3 (Jenkins Decl.) ¶ 6. Mr. Schultz was hired as a Pre-Owned Manager for the sale of used cars and he worked at Nationwide from February 24 to April 3, 2018. Ex. A ¶ 51. His Pay Plan, like those of Mr. Holmes and Mr. Coady, offered him a $1,000 weekly salary guaranteed for the first 90 days of his employment, and certain commissions and bonuses based on the gross profits for the vehicles he sold and unit bonuses for selling more than 50 cars in a month. *Id.*; Schultz Ex. 1 at 350. For his last pay period with Nationwide, during which he worked six days, Mr. Schultz received the pro rata portion of his guaranteed salary, $1,200.00, plus commissions totaling $1,920.55. Ex. A ¶ 52; Schultz Ex. 2 at 352.  The ADP payroll summary for that period reflects a gross payment of $3,120.55, less standard payroll deductions and a charge of $33.00 for Mr. Schultz's pre-employment drug test, Ex. A ¶ 52; Schultz Ex. 2 at 351, which he had agreed could be paid from his payroll check. Schultz Ex. 3 at 353. No other charges were deducted from Mr. Schultz's gross wages. Ex. A ¶ 52. Based on the 60.87 hours that Mr. Schultz worked during his last pay period with Nationwide, he earned approximately $51.25 per hour, an amount far in excess of the federal minimum wage. *Id.* Like the other former employees described above, he would have no valid FLSA claim against Nationwide.

**III.      <u>ARGUMENT</u>**

**A.      The Legal Framework of Plaintiffs' Motion for Conditional Certification.**

Count IV of the Complaint alleges a claim based on the FLSA on behalf of the named Plaintiffs and "the Collective." It states that "[t]he FLSA entitles employees to overtime compensation of not less than one and a half times their regular pay rate for all hours over 40 worked in any given week." ECF 10 (Am. Compl.) ¶ 144. The Complaint then goes on to allege – incorrectly in light of § 213(b)(10)(A) – that the "only relevant exception to this requirement is

that employees are exempt if 1) they make more than one and a half times the federal minimum wage and 2) more than half of their compensation comes from commissions." *Id*. ¶ 145 (citing the separate exemption for commissioned salespersons in § 207(i)). Finally, Count IV acknowledges "[i]n the alternative, [that] members of the Collective who were in supervisory positions were exempt if they made $455 per week (prior to January 1, 2020) or $684 per week (after January 1, 2020). *Id.* ¶ 146.

Count IV alleges that Defendants, by making "false or improper deductions to Collective members' paychecks," paid Plaintiffs "less than one and a half times the minimum wage, did not pay overtime, and did not pay supervisory employees at least $455 or $684 per week." *Id*. ¶ 147. It is this claim on which Plaintiffs seek conditional certification, and the pending Motion makes clear that the claim is limited to deductions taken from the employees' final paychecks, which allegedly "resulted in Defendants' paying Plaintiffs and other similarly situated employees less than one and a half times the minimum wage, as minimally required for commissioned employees . . . and not paying them overtime." ECF 60-1 at 2. Plaintiffs also contend that some former employees "received no final pay check at all, and some received amounts so low it brought their rate of pay below minimum wage." *Id*. at 2-3. These FLSA claims are both legally deficient and factually wrong.

### B.      Nationwide Is Entitled to Rely On the Exemption in § 213(b)(10)(A).

Plaintiffs claim that their final paychecks were below FLSA minimums in part because they did not satisfy overtime requirements, which are set forth in § 207 of the FLSA. But § 207 "shall not apply" here pursuant to 29 U.S.C. § 213(b)(10)(A), which exempts retail automobile sales and service workers from the provisions of FLSA § 207. *See* 29 U.S.C. § 213; *Encino Motorcars, LLC* v. *Navarro*, 579 U.S. 211, 219 (2016) (*Encino I*); *Encino Motorcars, LLC* v. *Navarro*, 138 S. Ct. 1134, 1138 (2018) (*Encino II*).

In *Encino I*, the Supreme Court recounted the evolution of the § 213(b)(10)(A) exemption. Originally, in 1961, "Congress enacted a blanket exemption from the FLSA's minimum wage and overtime provisions for all automobile dealership employees." 579 U.S. at 215. A 1966 amendment replaced the broad exemption with a narrower definition of dealership employees ("any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles"), and limited the exemption to the overtime compensation requirement, thereby subjecting automobile dealerships to the minimum wage requirements only. *Id.* In 1970, the Department of Labor construed the narrower definition of exempt employees to exclude *service* employees. *Id.* at 216. It later abandoned that position in 1978 in light of intervening amendments to the FLSA text, but returned to it in 2011 when it finally promulgated an official regulation. *Id.* at 217-18. The *Encino I* decision holds that the Department gave no reasoned explanation for its return to a 1970 interpretation of the statute, and the Court remanded for lower courts to interpret the § 213(b)(10)(A) exemption "without placing controlling weight on the Department's 2011 regulation." *Id* at 224.

On remand, the Court of Appeals again held that the exemption did not include service advisors, and the Supreme Court again took up the case. In *Encino II*, the Court reversed the Court of Appeals and held that service advisors, like Mr. McMillen, are salesmen primarily engaged in selling automobiles. 138 S. Ct. at 1140-41. Significantly, the Court rejected the principle that FLSA exemptions should be construed narrowly. *Id.* at 114. After *Encino II*, at least one lower court concluded that the *Encino* decision required decertification of a collective action against an automobile dealer and the entry of summary judgment on overtime claims filed by the plaintiffs. *Buehlman* v. *Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 310-14 (W.D.N.Y. 2018).

The exemption under § 213(b)(10)(A) applies to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." As Mr. Schaefer explains in his Declaration, Nationwide is an automobile dealership that is primarily engaged in the business of selling new and used vehicles; and all of the employees who are defined as being part of the "Collective" are sales personnel and service managers who spent all of their tenures with Nationwide primarily engaged in selling at retail or servicing automobiles and trucks. *See* Ex. A (Schaefer Decl.) ¶ 3. In the context of automobile dealerships, the Department of Labor regulations interpreting the exemption in § 213(b)(10)(A) define "primarily engaged" in selling to mean that 50% or more of Nationwide's sales must be derived from the sale of new and used vehicles – rather than extended warranties, insurance plans or other ancillary products. *See* 29 C.F.R. § 779.372(d). This is a level that Nationwide far exceeds. Ex. A ¶ 3. From 2017 through today, more than 90% of Nationwide's sales revenue has been derived from the sales of new and used automobiles and trucks. *Id.* And Nationwide has never been engaged in the manufacture of automobiles or trucks. *Id.*[6]

These facts demonstrate that the sales and service employees of Nationwide are exempt from the overtime pay requirements of the FLSA under § 213(b)(10)(A). As a result, Plaintiffs can show a violation of the FLSA only if they establish that their final paychecks amounted to less than the federal minimum-wage threshold. For nonexempt employees, that threshold is $7.25 per hour, and as shown above all of the sales employees who have joined in this action, or who have

---

[6] In *Buehlman v. Ide Pontiac*, *supra*, 345 F. Supp. 3d at 312, the court determined that a declaration from a corporate officer, like Mr. Schaefer's declaration here, was "sufficient to establish that, for purposes of the [§ 213(b)(10)(A)] Exemption, [the defendant] is a nonmanufacturing establishment primarily engaged in the business of selling vehicles."

been identified as part of the "collective," were paid at levels greater than the federal minimum wage.

### C.     The Court Should Deny the Motion for Conditional Certification.

#### 1.     The bar for conditional certification is meaningful if not high, and courts regularly deny conditional certification.

This Court has discretion to determine the appropriateness of conditional collective-action certification. *Brooks* v. *Stevenson Univ., Inc.*, No. SAG-19-1159, 2020 WL 247307, at *1 (D. Md. Jan. 16, 2020). The standard for conditional certification (as opposed to a motion to decertify) is often described as "fairly lenient" or "relatively modest," *see id.*, but courts do not merely rubber-stamp the motion based on the plaintiff's allegations. Courts require a "factual showing," *see id.*, which cannot be met by allegations in the complaint. *See Camper* v. *Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000). As Judge Legg explained, "The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation. Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna* v. *M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995).

The "paramount" issue is whether the plaintiffs have demonstrated that potential class members are "similarly situated." *See Andrade* v. *Aerotek, Inc.*, No. CCB-08-2668, 2009 WL 2757099, at *3 (D. Md. Aug. 26, 2009) (citation omitted). Courts have also held that "consideration of issues relating to the manageability of a proposed collective action is appropriate" to consider at the conditional-certification stage. *Bouthner* v. *Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012). "In particular, a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require substantial individualized determinations for each class member." *Syrja* v. *Westat,*

*Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (quotations omitted); *see also Hunt* v. *Aldi, Inc.*, No. CBD-18-2485, 2020 WL 7332715 (D. Md. Dec. 11, 2020); *Slavinski* v. *Columbia Ass'n, Inc.*, No. CCB-08-890, 2011 WL 1310256, at *4-6 (D. Md. Mar. 30, 2011) (denying motion for conditional certification when plaintiff did not show that other employees classified as exempt were similarly situated to her).

Many courts in this district and others have denied conditional certification in whole or in part when the plaintiff fails to meet these standards. In *Syrja*, Judge Messitte declined a motion for conditional certification in part on the grounds that the plaintiff group, field interviewers for a survey research firm, had variable work schedules and did not maintain independent records of their work hours. *See* 756 F. Supp. 2d at 687-89. In *Andrade*, the plaintiffs proposed a class of employment recruiters who allegedly had been misclassified as exempt employees under the FLSA. Judge Blake denied conditional certification of that proposed class (while granting the motion as to a different class) on the ground that the putative members had different job responsibilities. 2009 WL 2757099, at *3-4. *See also Bouthner* v. *Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012) (declining to conditionally certify when three plaintiffs alleged that they were not paid overtime but could not show a policy not to pay overtime); *Brown* v. *White's Ferry, Inc.*, No. DKC 11-1683, 2011 WL 5151394 (D. Md. Oct. 27, 2011) (denying motion to certify without prejudice where plaintiff failed to identify similarly situated employees).

In this case, it is clear that the pay plans of the various sales department employees of Nationwide differed significantly. Moreover, the deductions taken from a few employees' last paychecks were not based on a common plan or policy and varied significantly depending on the terms of their pay plans. Of even greater significance, for all but one of the employees that

22

Plaintiffs have identified as part of the "Collective," those employees were paid more than the federal minimum wage at all times during their employment with Nationwide, including during their last pay periods.

### 2. Nationwide has not "admitted" to a common policy that violates the FLSA, and the facts establish no such violations.

Plaintiffs chiefly argue that certification is warranted because Nationwide's Answer admits that "for a period of time [it] instituted a policy whereby departing sales employees were charged for" certain unearned commissions and unreimbursed costs and expenses they had incurred while employed at Nationwide. ECF 53 ¶ 73. But the test for conditional certification is whether "there exists a class of similarly situated potential plaintiffs who were subject to a common policy *that violated the FLSA*." *Arnold* v. *Acappella, LLC*, No. BPG-15-3001, 2016 WL 5454541, at *3 (D. Md. Sep. 29, 2016) (emphasis added). Plaintiffs never explain why Nationwide's policy (which is no longer in effect) violated the FLSA, and the factual allegations before the Court do not support such a finding.

Under the FLSA, an employer *may* make deductions "in nonovertime workweeks if the employee nevertheless received the required minimum wage in cash free and clear." 29 C.F.R. § 531.36(b). Deductions are unlawful only if they "reduce the wages of the employee in any such workweek below the minimum required" by the FLSA. *Id.*; *see also* 29 C.F.R. § 531.37(a) ("It is the Administrator's opinion that deductions may be made … on the same basis in an overtime workweek as in nonovertime workweeks … if their purpose and effect are not to evade the overtime requirements of the Act or other law, providing the amount deducted does not exceed the

amount which could be deducted if the employee had only worked the maximum number of straight-time hours during the workweek.").[7]

### 3. The record does not establish a consistent violation of the relevant "minimum wage," which for all potential plaintiffs is $7.25 per hour, pursuant to § 213(b)(10)(A).

Plaintiffs repeatedly claim that their final paychecks were below FLSA minimums in part because they did not satisfy overtime requirements, which are set forth in § 207 of the FLSA. But § 207 "shall not apply" here pursuant to § 213(b)(10)(A), which exempts retail automobile sales and service workers from the provisions of FLSA § 207. *See* 29 U.S.C. § 213; *Encino I*, 579 U.S. at 219; Part III.B *supra*. As a result, Plaintiffs can show a violation of the FLSA only if they establish that their final paychecks amounted to less than the federal minimum-wage threshold. That threshold is $7.25 per hour, and as shown above all of the sales employees who have joined in this action, or who have been identified as part of the "collective," were paid at levels greater than the federal minimum wage.

For purposes of this motion, the question is not whether one or even a few final paychecks fell below that threshold, but whether Plaintiffs can show a common policy that resulted in deficient paychecks for a number of Nationwide's former employees sufficient to warrant pursuing this case as a collective action. As set forth above, Plaintiffs have not met that burden. Only one of the nine identified former employees, Mr. McMillen, is even potentially within the scope of the FLSA. All of the others received more than the minimum pay required when they received their last paychecks.[8] Plaintiffs have not met their burden to show a common policy of violating the

---

[7] Under Maryland law, employers may make deductions from employee wages if "authorized expressly in writing by the employee." Md. Code Ann., Labor & Emp. § 3-503. The deductions at issue here were authorized in the employees' pay plans and in other documents they signed at the time they were hired.

[8] As shown above, the circumstances surrounding the withholding of Mr. McMillen's last paycheck were unique to his responsibilities as a service department manager, and were not part of a common policy, scheme, or plan to violate the FLSA. Moreover, Nationwide has offered, and remains willing, to reimburse Mr. McMillen for the full amount of his last paycheck.

FLSA when eight of the nine proffered former employees have asserted FLSA claims that fail as a matter of law. For this reason alone, the motion for conditional certification should be denied.

### 4.   Conditional certification is not warranted because Plaintiff's proposed class would require numerous "individual determinations."

Even if Plaintiffs' claims did not fail as a matter of law, the record facts before the Court establish that this case is not suited for conditional certification because the named Plaintiffs are not materially similar to one another or to other members in the proposed collective, and because adjudicating this case as a collective action will enmesh the parties and the Court in numerous individual determinations.

Again, because the pending motion seeks conditional certification of an FLSA collective, the threshold task is to ascertain the nature of the claim under the FLSA—not under the other claims in the case. The FLSA claim is limited to commissioned employees who received less than the minimum amounts required under the FLSA *in their last paycheck*. To determine who fits within that class and whether adjudicating claims as a collective will be efficient and manageable, the Court must first determine whether the former employees were exempt or nonexempt under the FLSA. All former employees identified by Plaintiffs are exempt under § 213(b)(10)(A). It appears that all potential collective members will be covered by this exemption as well, which means they will not be subject to the FLSA's requirements for overtime pay. The Court then must determine whether the potential class members had last paychecks withheld or reduced, and the reason for any such withholdings or reductions. The facts set forth above show no consistent pattern for deductions: for example, Mr. Holmes's reduction for service repairs to his personal car has no relation to Mr. Coady's reduction (pursuant to the terms of his pay plan) for certain commission chargebacks. Mr. McMillen's reduction for failing to ensure that service department customers made certain payments has no relation to Mr. Schultz's nominal reduction for a drug

screening test. And of course none of these reductions has any relation to the Plaintiffs or potential plaintiffs who had *no* reductions (other than standard withholding deductions) taken from their final paycheck, like Ms. Avent.

Finally, the Court must determine whether potential class members received less than the minimum pay threshold applicable to that individual under the FLSA. Reductions alone do not violate the FLSA; Plaintiffs must show a violation of the federal minimum wage. The facts set forth above show that Plaintiffs cannot meet that threshold for eight of the nine former employees they have identified. That ratio, and the unique facts surrounding Mr. McMillen's claim, suggests that adjudicating these claims as a collective will require the Court and the parties to devote most of their resources toward filtering out opt-in persons who have no claim, increasing litigation expenses and confusing and annoying recipients of Plaintiffs' proposed Court-ordered notice to former Nationwide employees. The record before this Court shows no basis for treating this case as a collective action. Plaintiffs have highly individualized and disparate pay plans and present unique circumstances surrounding the payments of their last paychecks. Even if deductions were made from their last paychecks, that fact alone will not establish an FLSA claim. The costs attendant with notice and other complexities of collective adjudication will far outweigh the benefits. For these reasons, the motion for conditional certification should be denied.

### 5.   Plaintiffs' cases are inapposite because they address complete failures to issue final paychecks.

Plaintiffs cite several cases for the proposition that courts "have granted conditional class certification for allegations of failure to properly pay a last paycheck in violation of the FLSA." ECF 60-1, at 7-8. But those cases are inapposite because they all address complete failures by insolvent or recalcitrant employers to issue final paychecks across the board. In Plaintiffs' lead case, *Macias* v. *Catapult Painting, LLC*, No. H-19-4856, 2020 WL 6253589 (S.D. Tex. Oct. 22,

2020), the plaintiffs were hourly workers who alleged without contradiction (no response was filed to the motion to conditionally certify) that they were not paid at all for their final paychecks. In *Macias* the reason for the failure to issue final paychecks was not clear, but Plaintiffs' other cases all reflect the relatively common occurrence where an employer ceases operations or closes a facility and fails to issue final paychecks to the group of laid-off employees. In *Ortiz* v. *Metters Indus., Inc.*, No. 6:17-cv-1879, 2019 WL 338942 (M.D. Fla. Jan 28, 2019), for instance, the plaintiffs alleged, again without clear contradiction, that the defendant closed the employment facility and "[p]laintiffs were terminated and not paid for the final (between five and twelve) weeks of employment. *Id.* at *1. *See also Martinez* v. *First Class Interiors, LLC*, No. 3:18-cv-00583, 2019 WL 4242409, at *6 (M.D. Tenn. Sep. 6, 2019) (alleging that employer announced that it did not have funds to pay for plaintiffs' last two weeks of work); *Molina* v. *Ace Homecare LLC*, No. 8:16-CV-2214, 2017 U.S. Dist. Lexis 133260, at *6 (M.D. Fla. Aug. 21, 2017) (alleging that after defendants' "mass facility shutdowns" plaintiffs "received no compensation whatsoever" for their last two weeks of employment); *Valenzuela* v. *Best-Line Shades, Inc.*, No. 19-cv-07293, 2021 WL 3514101, at *1 (N.D. Cal. Aug. 10, 2021) (allegation that defendant did not pay plaintiffs for two-week period before ceasing operations).

Failing to issue a final paycheck is generally an FLSA violation because it means that the Defendant did not meet the minimum wage or overtime provisions of the FLSA. But Plaintiffs have cited no case that reasonably approximates their allegation here, which is *not* that Nationwide implemented a policy of failing to issue final paychecks. Instead, Plaintiffs allege that Nationwide had a policy of making deductions from final paychecks and they allege, incorrectly, that these deductions resulted in the members of a collective class failing to receive the federal minimum

wage for their last pay period. As set forth above, Plaintiffs have wholly failed to establish that Nationwide's policy violated the FLSA.

### D.   If the Court Grants Conditional Certification, It Should Substantially Revise Plaintiffs' Proposed Notice.

#### 1.   The Notice Should Be Sent Only to Persons Who Could Have Claims that Are Within the Two-Year Limitations Period.

Plaintiffs request that notice be sent to "[a]ll individuals who were previously employed and compensated in part or entirely on a commissioned basis by Defendants from May 4, 2017 to the present." ECF 60-4, at 1. The May 4, 2017, date is three years before the filing of the Complaint and more than five years before the date any notice would be sent. Plaintiffs' request is overbroad because their notice would go mostly to persons whose potential claims are barred by the statute of limitations, creating needless expense and confusion for the parties, counsel, and the Court. The Court should limit the recipients to persons who were previously employed by Nationwide within two years of an order granting conditional certification.

Under the FLSA, the statute of limitations is two years after accrual for most actions and three years for "willful" violations. 29 U.S.C. § 255(a). A violation is willful only when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin* v. *Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The employee bears the burden of proving willfulness. *Desmond* v. *PNGI Charles Town Gaming LLC*, 630 F.3d 351, 358 (4th Cir. 2011). A named plaintiff's claim commences on the date the complaint is filed if written consent is filed with the complaint. 29 U.S.C. § 256(a). But for all other plaintiffs, the claim does not commence until that plaintiff files written consent to join the collective action. 29 U.S.C. § 256(b).

That raises two questions for purposes of the notice period: whether the two- or three-year limitations period should apply; and whether the "anchor date" for notice should be when the

complaint was filed, or when the order of conditional certification was issued, or something in between. As to the former question, the Court should limit notice to the two-year period of limitations because the Complaint in this case contains no allegation of willfulness, or of a knowing or reckless violation of the FLSA. *See* ECF 10, at ¶¶ 149-155 (FLSA allegations) & Prayer for Relief ¶ 4; *see also Feliciano* v. *Wehunt*, No. 1:09-cv-03130, 2010 WL 1565493, at *1 (N.D. Ga. Apr. 19, 2010) ("Plaintiffs' complaint makes no allegations of willfulness, and therefore, the statute of limitations for Plaintiffs' claims is two years.").

As to the anchor date, the Court should order that notice be sent to relevant persons who were employed within two years of the date the court orders conditional certification or, alternatively, the date of the motion for certification. Although courts are split on this issue, "[m]any courts around the country require the provision of notice only to persons employed by the defendant within three years of the notice or of the court order approving such notice." *Hussein* v. *Capital Bldg. Servs. Group, Inc.*, 152 F. Supp. 3d 1182, 1195-96 (D. Minn. 2015) (citations omitted); *see also Pettenato* v. *Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 283 (S.D.N.Y. 2019) (keying notice to three years from the time plaintiffs filed motion for conditional certification); *Drayton* v. *City of New York*, No. 18-CV-10138, 2020 WL 6465911, at *4 (S.D.N.Y. Nov. 3, 2020) (same); *Mogollan* v. *La Abundancia Bakery & Rest., Inc.*, No. 18-CV-03202, 2019 WL 5693375, at *7 (S.D.N.Y. Nov. 4, 2019) (same); *Carrel* v. *MedPro Group, Inc.*, No. 16-CV-130, 2016 WL 4884157, at *2 (N.D. Ind. Sep. 15, 2016) (same).

When courts use the filing of the complaint as the anchor date for notice, they usually rely on the possibility of equitable tolling of the statute of limitations. But equitable tolling is a high bar for a plaintiff to clear, and Plaintiffs here have neither pleaded it nor offered any reason to conclude that it could apply. "[E]quitable tolling is available when 1) the plaintiffs were prevented

from asserting their claims by some kind of wrongful conduct on the part of the defendant, or 2) extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz* v. *Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (citations and internal quotations omitted).[9]

### 2. The Court Should Not Authorize Notice by Text Message or Require Nationwide to Produce Former Employee Telephone Numbers.

Without comment or analysis, Plaintiffs submitted a proposed order that would require Nationwide to provide Plaintiffs' counsel with an Excel spreadsheet containing the "name and last known mailing address, email address, and phone number of all individuals who fit within the definition of the Putative Collective." ECF 60-8 at ¶ 2. The proposed order would require Plaintiffs' counsel to send notice by mail, and would authorize Plaintiffs to send notice "via email and/or text message." *Id.* ¶ 3.

The Court should not require Nationwide to furnish telephone numbers, nor should it permit Plaintiffs to send notice by text message. Furnishing telephone numbers may invite improper solicitation and intrusions on privacy. *See Arevalo* v. *D.J.'s Underground, Inc.*, No. DKC

---

[9] Plaintiffs have neither pleaded equitable tolling nor have they set forth a factual basis to support it. Substantial time has elapsed since the filing of the Complaint, but nothing prevented other putative plaintiffs from filing written consents to join the action during that period. Although equitable tolling principles are sometimes applied in these circumstances, in this case the prospective members of the proposed collective were not "prevented from asserting their claims by wrongful conduct on the part of the defendant" nor by "extraordinary circumstances beyond [their] control [that] made it impossible for them to file the claims on time." *See generally Cruz* v. *Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (quoting test for equitable tolling). In this matter, three former employees of Nationwide filed joinders in this action after it was filed, including Mr. McMillen, who filed a consent to join on December 30, 2021 (ECF 45) while the appeal on the question of arbitrability remained pending. *All* of the proposed collective members of the FLSA class are *former* employees of Nationwide, who faced no job related pressure to prevent them from filing a claim, and all of them were obviously aware of the amounts of their last paycheck when they received those payments. In short, nothing prevented them from joining in this action before now, particularly when this lawsuit had been extensively publicized by the named Plaintiffs and their counsel through word of mouth and from published news stories. *See* Max Kutner, *Wording Kills Car Dealer Chain's Bid to Arbitrate Wage Claims*, Law360 (Nov. 20, 2020)    https://www.law360.com/articles/1330699/wording-kills-car-dealer-chain-s-bid-to-arbitrate-wage-claims; Steve Lash, *Timonium Car dealer loses 4th Circuit bid for arbitration in wage suit*, Daily Record (Apr. 25, 2022), https://thedailyrecord.com/2022/04/25/timonium-car-dealer-loses-4th-circuit-bid-for-arbitration-in-wage-dispute/; George Weykamp, *Wage lawsuit against Maryland dealer can proceed*, Automotive News (May 13, 2022), https://www.autonews.com/dealers/wage-lawsuit-against-maryland-dealer-can-proceed.

09-3199, 2010 WL 4026112, at *2 (D. Md. Oct. 13, 2010). Although authority on these issues is mixed, judges in this District have generally not permitted FLSA plaintiffs to acquire the telephone numbers of putative members for purposes of conditional certification, at least at the outset. *See Arnold* v. *Acappella, LLC*, No. BPG-15-3001, 2016 WL 545451, at *4 (D. Md. Sep. 29, 2016) (denying request for telephone numbers "because plaintiff has not shown any special circumstances to necessitate such production"); *McFeeley* v. *Jackson St. Entm't, LLC*, No. DKC 12-1019, 2012 WL 5928902 at *5 n.2 (D. Md. Nov. 26, 2012) ("[A]bsent a showing by plaintiffs of special need for disclosure of class members' telephone numbers, ordering such disclosure is not appropriate.") (citations and internal quotations omitted); *Arevalo*, 2010 WL 4026112, at *2 ("Plaintiffs have failed to submit an affidavit or declaration establishing a need for providing notice by telephone contact.").[10] Cases in this District have also denied requests to send notice by text message unless the plaintiff shows a need to use that medium. *See Knox* v. *Hooper's Crab House, Inc.*, No. CCB-17-1853, 2018 WL 723964, at *4 (D. Md. Feb. 6, 2018) (denying notice by text message with possibility of reconsideration if initial notice receives a large number of undeliverables); *Blake* v. *Broadway Servs., Inc.*, No. CCB-18-086, 2018 WL 4374915 (D. Md. Sep. 13, 2018) (denying request to send notice by text message in the first instance); *Sarahong* v. *Smartlink, LLC*, No. BPG-22-328, 2022 WL 2065930, at *3 (D. Md. June 8, 2022) (allowing text message notice only to those putative members for whom defendants did not provide an email address). Indeed, Plaintiffs' lead case for the (erroneous) proposition that certification is warranted for last-paycheck deductions also denied a request for notice by text message. *See Macias*, *supra*,

---

[10] Plaintiffs cite one case authorizing notice by text message, but that case gave the issue no consideration and merely appears as part of the Court's order at the end of its opinion on certification. *See Mazariegos* v. *Pan 4 America, LLC*, No. DLB-20-2275, 2021 WL 5015751, at *6 (D. Md. Oct. 28, 2021).

2020 WL 6253589, at *5 ("Text messages and phone calls can present invasion of privacy concerns.")

Plaintiffs here have made no attempt to demonstrate a need for personal telephone numbers or for sending notice by text message. Accordingly, if the Court grants the motion, it should strike those requirements from Plaintiffs' proposed order.

### 3.    Any notice should not refer to Plaintiffs' non-FLSA claims.

Plaintiffs' motion seeks conditional certification for a collective action under the FLSA. The sole alleged violation of the FLSA relates to underpayment or nonpayment of former employees' final paychecks. Yet Plaintiffs' proposed notice is aimed at persons who were "compensated in part or entirely on a commissioned basis by Defendants from May 4, 2017 to the present." ECF 60-6, at 1. The remainder of the notice repeatedly refers to alleged underpaying of commissions in general, which is a separate claim Plaintiffs make under the Maryland Wage Payment and Collection law, not under the FLSA. *See id.* ("The lawsuit asserts that Nationwide violated federal *and state* wage laws by reducing employees' pay in the last paycheck or not paying a last paycheck at all, *as well as underpaying employees on their commissions earned*.") (emphasis added).

Plaintiffs cannot use the FLSA to bootstrap their separate claims involving substantially different factual questions and other provisions of law. Although Plaintiffs' Complaint seeks certification of a class for those state law claims, no motion for class certification is before the Court, and Defendants will have many additional arguments to pursue if and when Plaintiffs move for certification under Rule 23.

Cases are divided on whether references to other claims are permissible in an FLSA conditional-certification notice, but the better authority recognizes that such references are apt to confuse the recipients and therefore should not be included. *See Johnson* v. *Carlo Lizza & Sons*

*Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016) (references to non-FLSA claims apt to confuse potential plaintiffs and not permitted in court-ordered notice); *Ochoa* v. *Kaptan*, No. 16-cv-2295, 2017 WL 11512683, at *5 (E.D.N.Y. Mar. 7, 2017) (same); *Keawsri* v. *Ramen-Ya, Inc.*, No. 17-CV-2406, 2018 WL 279756, at *7 (S.D.N.Y. Jan. 2, 2018) (same); *Hall* v. *U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 898 (S.D. Ohio 2018) (accepting defendants' argument that notice should not refer to non-FLSA claims, albeit without response from plaintiff); *cf. Hilaire* v. *Underwest Westide Op'g Corp.*, No. 19 Civ. 3169, 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020) (noting split of authority and limiting but not eliminating references to other claims). In this case, the FLSA claims are narrow—focusing solely on final paychecks. The bulk of Plaintiffs' Complaint relates to other issues, and the parties have not yet litigated whether those claims are suitable for class treatment. Referring to claims for "underpaying employees on their commissions earned" is not what this FLSA claim is about.

The Court should limit notice under the FLSA to former commissioned employees of Nationwide who "did not receive a final paycheck or who received in their final paycheck less than the minimum payments required by the FLSA." Nationwide has attached a redlined version of Plaintiffs' proposed notice showing this and other requested changes.

> **4.    Any notice should make other changes to reflect the realities of the FLSA claim and the obligations of opt-in plaintiffs in the litigation.**

As shown in the attached redlined version of Plaintiffs' proposed notice, the Court should also eliminate or modify certain erroneous, misleading, or irrelevant statements. The notice should not say, for instance, that "The FLSA prohibits Nationwide from terminating you or taking any other adverse employment action against you for participating in this lawsuit." By definition, the proposed collective consists solely of *former* Nationwide employees, so the admonition is not relevant. The notice also does not adequately explain Nationwide's position in the FLSA litigation.

The notice also should not state that "You will not ever have to pay any costs or attorneys' fees out of your own pocket." No notice can make that promise. FLSA plaintiffs have been held liable for substantial costs under Rule 54. *E.g.*, *Camesi* v. *Univ. of Pittsburgh Med. Ctr.*, 753 Fed. Appx. 135 (3d Cir. Nov. 9, 2018) (unpublished); *Kuznyetsov* v. *West Penn Allegheny Health Sys., Inc.*, No. 10-948, 2014 WL 5393182 (W.D. Pa. Oct. 23, 2014); *Covachuela* v. *Jersey Firestop, LLC*, No. 20-8806, 2021 WL 1326985, at *3 (D.N.J. Apr. 9, 2021); *Byard* v. *Verizon West Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D. W. Va. 2012); *Dunkel* v. *Warrior Energy Servs., Inc.*, 304 F.R.D. 193 (W.D. Pa. 2014) (collecting additional cases). Moreover, FLSA plaintiffs, like any other party, can be sanctioned for misconduct during litigation. *See*, *e.g.*, Fed. R. Civ. P. 11(c), 37(a)(5), 37(b)(2)(C), 37(d). Given these authorities, the proposed notice should provide clear notice that Plaintiffs who join the suit could be held liable (at least) for court costs and certain expenses. Defendants' proposed revision incorporates the language authorized by the district judge in *Dunkel*, 304 F.R.D. at 207.

Finally, Plaintiffs' proposed notice is inadequate because it gives recipients limited and somewhat hidden warning of their litigation obligations. In notice approval under the FLSA, "Courts 'routinely accept[]' text notifying potential plaintiffs 'of the possibility that they will be required to participate in discovery and testify at trial.'" *Byard*, 287 F.R.D. at 374 (quoting *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)); *see also Butler*, 876 F. Supp. 2d at 575 (modifying notice to include reference to advise plaintiffs about "the possibility of having to participate in the discovery process and the trial."). That warning should be clear and prominent and provide recipients with useful information. Providing documents and deposition testimony can be a real imposition, particularly given the very limited

nature of the Plaintiffs' FLSA claims. Nationwide has proposed more realistic and prominent language in the attached revision of Plaintiffs' proposed notice. *See* Ex. B.

IV.   <u>**CONCLUSION**</u>

For the reasons stated, Defendants respectfully request that the motion for conditional certification be denied. If the Court grants the motion, the proposed notice should be substantially revised in accordance with Defendants' submission.

Dated: July 8, 2022                                     Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By: /s/ *William J. Murphy*
_____

William J. Murphy (Bar No. 00497)
John J. Connolly (Bar No. 09537)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
410 332 0444 (Phone)
410 659 0436 (Fax)
wmurphy@zuckerman.com
jconnolly@zuckerman.com

Robert Gittins (Bar No. 28240)
Eccleston and Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
410 752 7474 (Phone)
410 752 0611 (Fax)
gittins@ewmd.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of July, 2022, copies of the foregoing were served by ECF on all counsel of record.

/s/ *John J. Connolly*

John J. Connolly