IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MICHAEL COADY,** *et al.*, | * | |
| | * | |
| **Plaintiffs, on behalf of themselves and others similarly situated,** | * | |
| v. | * | Civil Case No. SAG-20-1142 |
| | * | |
| **NATIONWIDE MOTOR SALES CORP.,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

## MEMORANDUM OPINION

Plaintiffs Michael Coady, Charles Jenkins, and Larry Holmes (collectively, "Plaintiffs") filed this action against Nationwide Motor Sales Corp., William H. Schaefer, Jr. and Brandon E. Schaefer (collectively, "Defendants") alleging unjust enrichment and underpayment of wages in violation of state and federal law. ECF 10. Currently pending is Plaintiffs' Motion for Conditional Certification ("the Motion"), ECF 60. The Motion has been fully briefed, ECF 60-1, 61, 69, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, Plaintiffs' Motion will be denied.[1]

### I. BACKGROUND

William Schaefer Jr. and Brandon Schaefer own Nationwide Motor Sales Corp. ("Nationwide"), a Maryland corporation that owns and operates four car dealerships under the trade names Nationwide Infiniti of Timonium ("Nationwide Infiniti"), Nationwide Kia, Nationwide Nissan, and Nationwide Motor Sales ("Nationwide Pre-Owned"). ECF 10 ¶¶ 1, 16-

---

[1] Also pending is Defendants' Motion for Leave to File a Surreply, ECF 70. In light of the rulings described herein, Defendants' Motion will be denied as moot.

18. Plaintiffs were formerly employed at Nationwide dealerships for various periods between 2015 and 2019. *Id.* ¶¶ 13-15, 75, 87, 95. During at least some portion of their respective employment at Nationwide, Plaintiffs were compensated in whole or in part via the payment of sales commission. *Id.* ¶ 2.

As relevant to the Motion, Plaintiffs allege that Defendants maintained a policy and practice of failing to pay departing employees the full amount due for their last pay period by deducting fictitious or falsified costs from their final paychecks.[2] *Id.* ¶ 7, 56-57. Plaintiffs contend that departing employees were not paid overtime on these final paychecks, and—because these improper deductions substantially reduced departing employees' effective hourly pay rate—Defendants could not avail themselves of applicable exemptions to federal statutory overtime requirements. *Id.* ¶¶ 144-47 (noting that the employees are exempted from federal overtime requirements if they: (i) make more than one and a half times the federal minimum wage and more than half of their compensation comes from commissions; or (ii) were in supervisory positions and made $455 per week (prior to January 1, 2020) or $684 per week (after January 1, 2020)) (citing 29 U.S.C. § 207; 29 U.S.C. § 213(a)(1)).

Plaintiffs filed this action in May, 2020, on behalf of themselves and others similarly situated seeking accounting (Count I), claiming unjust enrichment (Count III), and alleging violations of the Maryland Wage Payment and Collection Law and the Fair Labor Standards Act (Counts II, IV-V). ECF 10. Plaintiffs now seek conditional certification of a proposed collective for their Fair Labor Standards Act ("FLSA") claim in Count IV. ECF 60-1.

---

[2] Plaintiffs also allege that Defendants artificially depressed employees' sales commissions. ECF 10. These allegations are not relevant to their FLSA claim or the issue of conditional certification.

## II. LEGAL STANDARD

The FLSA permits plaintiffs to maintain a collective action against their employer. *See* 29 U.S.C. § 216(b). Specifically, that subsection provides, in relevant part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Essentially, then, Section 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008).

Typically, there are two stages to the certification of a FLSA collective action: (1) the conditional certification/notice stage and (2) the decertification stage. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). In the first stage, which is the one presented here, "the court makes a threshold determination of whether the plaintiffs have demonstrated that potential [collective] members are similarly situated, such that court-facilitated notice to putative [collective] members would be appropriate." *Id.* (citation omitted). To do so, plaintiffs must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006). "Plaintiffs may rely on '[a]ffidavits or other means,' such as declarations and deposition testimony to make the required showing." *Butler*, 876 F. Supp. 2d at 567 (quoting *Williams v. Long*, 585 F. Supp. 2d 679, 684-85 (D. Md. 2008)).

Although evaluated under "a fairly lenient standard," *Calderon v. Geico General Ins. Co.*, 2011 WL 98197, at *3 (D. Md. Jan. 12, 2011), "[d]eterminations of the appropriateness of

3

conditional collective action certification . . . are left to the court's discretion," *Syrja v. Westat, Inc.*, 756 F.Supp. 2d 682, 686 (D. Md. 2010). A court may deny certification where it appears that individualized determinations would negate the efficiencies arising from collective adjudication of a claim. *Id*. ("a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each [collective] member.'") (citations omitted).

## III.    ANALYSIS

Plaintiffs seek certification of "[a]ll individuals who were previously employed and compensated in part or entirely on a commissioned basis by Defendants from May 4, 2017 to present," (hereinafter referred to as the "Proposed Collective"). ECF 60-1 at 1. Plaintiffs contend that the Proposed Collective should be certified because they: "(a) are paid on a commission basis; [and] (b) received below minimum wage in their last paycheck, including when factoring in the applicable overtime rates." *Id.* at 2. As described below, this Court concludes that these nominal commonalities are insufficient to warrant conditional certification of a Proposed Collective characterized by disparate employment positions, job functions, pay plans, and alleged injuries.

This Court initially notes that although Nationwide's multiple dealership locations may weigh against a finding of similarity, Plaintiffs provide facts suggesting that at least one former employee at each of Nationwide's four dealerships was allegedly underpaid on their final paycheck. *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (explaining the manageability problems arising from a collective action extending across multiple geographic locations.). Plaintiffs' factual showing in support of their Motion is confined to declarations from Coady and Jenkins, both of whom were formerly employed at Nationwide Pre-

Owned.[3]  ECF 60-2, 60-3.  In their respective declarations, Coady and Jenkins described other individuals whose paychecks were allegedly improperly reduced by Defendants, but do not specify the Nationwide dealerships where all of these employees worked.  *But see* ECF 60-2 ¶ 4 (describing Sam Maiocco as "Infiniti Sales Manager").  Although not appended to this Motion, however, Plaintiffs previously submitted to this Court sworn declarations filed by William Freburger, Russell Macey Jr., and Alan McMillen.  ECF 14 ¶ 2; ECF 23 ¶ 2; ECF 45 ¶¶ 2, 8.  Taken together, these declarations provide facts regarding former employees at all four Nationwide dealerships.

Plaintiffs, however, seek to define the Proposed Collective to include all former Nationwide employees holding any position or title, so long as that individual was "compensated in part or entirely on a commissioned basis."  ECF 60-1 at 1.  That class is substantially overbroad.  In order to establish a common policy for purposes of conditional certification, a plaintiff must prove that a collective of similarly situated employees "had duties similar to the Plaintiff[s]" and "were subjected to similar working hour requirements."  *See Brianas v. Under Armour Inc.*, 2018 WL 2184448, at *3-4 (D. Md. May 11, 2018).  Plaintiffs did not provide any record or list of the positions to which their Proposed Collective would extend, much less demonstrate that this seemingly disparate group of employees maintained similar duties and working hour requirements.  To the extent that Plaintiffs offered information on the job titles and roles of persons in their Proposed Collective, it tends to disprove—rather than substantiate—their similarities.  Plaintiffs' Proposed Collective would encompass former Internet Sales Managers, Car Salespersons, Used

---

[3] Although Coady and Jenkins both attest to working at Nationwide Pre-Owned, the Amended Complaint alleges that Coady worked at Nationwide Nissan whereas Jenkins "worked at Nationwide Nissan and/or at Nationwide Pre-Owned."  *Compare* ECF 10 ¶¶ 75, 86, *with* ECF 60-2 ¶ 1, *and* ECF 60-3 ¶ 2.

Car Directors, and Service Managers, who were compensated in fixed sums,[4] solely on vehicle sales' commissions, to some degree on commissions from unspecified sales, or to some degree on commissions from the sale of vehicle parts or labor, respectively. ECF 23 ¶¶ 1, 3; ECF 60-3 ¶¶ 1, 3; ECF 14 ¶¶ 1, 3; ECF 60-2 ¶¶ 1-2; ECF 45 ¶¶ 1-3. Although this Court recognizes that "[s]imilarly situated does not mean identical," a collective must have more commonalities than merely a shared employer and some kind or degree of commission-based compensation. *Flores v. Unity Disposal & Recycling, LLC*, 2015 WL 1523018, at *2 (D. Md. Apr. 2, 2015) (cleaned up). The former employees within the Proposed Collective appear to have substantively different job responsibilities, levels of authority, degrees of client contact, and compensation packages. This high degree of dissimilarity largely dooms Plaintiffs' Motion. *See Andrade v. Aerotek, Inc.*, 2009 WL 2757099, at *3-4 (D. Md. Aug. 26, 2009).

For their part, Defendants devote the bulk of their opposition brief to a distinct issue: whether Plaintiffs state an FLSA claim at all. Defendants contend that Plaintiffs and the Proposed Collective are exempt from the FLSA overtime-pay requirements provided in 29 U.S.C. § 207 by means of 29 U.S.C. § 213(b)(10)(A) (hereinafter referred to as the "Dealership Exemption"). The Dealership Exemption applies to: (1) any salesman, partsman, or mechanic that is (2) primarily engaged in selling or servicing automobiles or trucks if (3) he is employed by a nonmanufacturing

---

[4] It is unclear whether persons formerly employed as "internet salespersons" or "internal sales managers" were even compensated on commission, such that they would fall within the Proposed Collective. Jenkins and Macey were employed both as internet sales managers and car salespersons. ECF 60-2 ¶¶ 1-2; ECF 23 ¶¶ 1, 3. For his part, Macey attested to working on commission during his time as a salesperson, whereas Jenkins somewhat vaguely asserted that "he was compensated on a commission basis," at Nationwide without distinguishing between his roles. *Id.* Defendants assert that internet salespersons and managers are not compensated on commission at all, but are rather paid a fixed salary, plus a fixed sum for internet customers who arrive at appointments, and an additional sum for those customers that subsequently purchase vehicles. ECF 61 at 10.

establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers. 29 U.S.C. § 213(b)(10)(A); *Encino Motorcars, LLC v. Navarro* ("*Encino II*"), 138 S. Ct. 1134, 1138 (2018). Defendants insist that the Dealership Exemption relieves their obligation to pay overtime such that Plaintiffs could only state an FLSA claim if their final paychecks fell below the federal hourly minimum wage threshold; only one former employee referenced by Plaintiffs, Alan McMillen, would satisfy that showing. *See* ECF 61 at 14, 24. The thrust of Defendants' argument, then, is that Plaintiffs cannot demonstrate that the Proposed Collective were "victims of a common policy or plan that *violated the law*" since there was no violation of law. *Enkhbayar Choimbol*, 475 F. Supp. 2d at 564 (emphasis added).

This Court recognizes that to the extent the Dealership Exemption applies, Plaintiffs are not legally entitled to receipt of overtime compensation under the FLSA.[5] *Encino II*, 138 S. Ct. at 1138. Moreover, it initially appears likely that during their employment with Nationwide, at least some of the Plaintiffs qualified for the FLSA's Dealership Exemption. First, Plaintiffs' job titles suggest that their roles fell within the definition of salesmen, partsmen, or mechanics. Second, it is probable, albeit not inevitable, that Plaintiffs were primarily engaged in the sale or service of automobiles. *See* 29 C.F.R. § 779.372 (defining "primarily engaged" to mean that "the major part

---

[5] Plaintiffs dispute this conclusion with a complex and apparently novel interpretation of law. As best this Court can understand, Plaintiffs assert that if the Dealership Exemption applies, employees are exempt from § 207(a), but remain subject to § 207(i), which is itself an exemption from § 207(a). Under Plaintiffs' theory, then, commissioned employees were only exempt from § 207(a)'s overtime-pay provisions if Defendants paid them at least $10.88 per hour in accordance with § 207(i), notwithstanding the fact that because these employees fell within the Dealership Exemption, they were already exempt from § 207(a)'s overtime-pay provisions. This interpretation lacks intuitive or logical sense and is unsupported by caselaw or statutory text. The FLSA expressly provides that "[t]he provisions of section 207 of this title shall not apply with respect to" employees falling within the Dealership Exemption. 29 U.S.C. § 213. Because § 207(i) and § 207(a) both appear within § 207, they are equally inapplicable to employees exempted under the Dealership Exemption.

or over 50 percent of the salesman's, partsman's, or mechanic's time must be spent in selling or servicing the enumerated vehicles."). As to the third requirement, Defendants submitted a declaration attesting that Nationwide "is a retail automobile dealership whose business is primarily selling new and used cars and trucks." ECF 61-1 ¶ 3.

Notwithstanding its initial persuasiveness, however, Defendants' argument is in tension with a bevy of caselaw that cautions this Court against making merits-based determinations at the conditional certification stage. At this stage, the question before this Court is "is not [] whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.2005) (internal citation omitted); *see also Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012); *Calderon*, 2011 WL 98197, at *7 n.1 (at conditional certification stage "[a]n argument on the merits is premature."); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Defendants did not raise their argument in a dispositive motion, which would be subjected to full briefing by the parties and considered carefully by this Court. This Court, then, like others in this District, will reserve decision on Defendants' legal argument until the pertinent issues are presented in connection with a dispositive motion, the briefing of which may persuade this Court to reconsider its tentative initial assessment. *See Andrade*, 2009 WL 2757099, at *4 n.11.

Although Defendants' reliance on the Dealership Exemption is not dispositive, it does underscore the individualized determinations that will be required to adjudicate Plaintiffs' claims. As described above, the second element of the Dealership Exemption requires a finding that an employee was *primarily engaged* in the sale or service of vehicles. 29 U.S.C. § 213(b)(10)(A) (emphasis added). At least to some degree, resolving whether a particular position was

misclassified as exempt will require evidence regarding the job duties and day-to-day functions of that role. *See Buehlman v. Ide Pontiac, Inc*., 345 F. Supp. 3d at 314 (W.D.N.Y. 2018) ("[B]ecause the applicability of the Exemption hinges on the proportion of time an employee spent servicing automobiles . . . whether each of the [Opt-In Plaintiffs] qualify for the [Exemption] will require an individual, fact-specific analysis.") (internal citations and quotation marks omitted). Simply put, the unlikelihood of resolving the Dealership Exemption's applicability by common proof minimizes the efficiencies of collective adjudication. *Syrja*, 756 F. Supp. 2d at 686.

This Court finally notes that the individualized determinations required to adjudicate the Proposed Collective's claims would not be confined to the Dealership Exemption. Plaintiffs allege that Defendants deducted varying amounts from former employees' final paychecks, and that they provided an array of pretextual explanations to justify their conduct. *See* ECF 10 ¶¶ 56-61; *see also* ECF 61 at 25-26. Quite unlike the caselaw that Plaintiffs cite in their support—all of which involved the certification of collectives that received no final paycheck at all—the Proposed Collective here includes persons whose final paychecks were reduced by varying degrees, or were withheld entirely, under unique circumstances citing disparate reasons. ECF 60-1 at 7 (collecting cases). Plaintiffs dispute this conclusion, arguing that the alleged underpayment of departing employees—to any degree and for any reason—is a common policy. ECF 60-1 at 3 ("Defendants 'admit that for a period of time they instituted a policy whereby departing sales employees were charged for the estimated value of unearned commissions on extended warranties and other long term plans and for the unreimbursed costs and expenses they had incurred.'" (quoting ECF 53 ¶ 73)). Defining their common policy at such a high level of generality, however, does not negate the fact that assessing the propriety of any particular deduction, or the veracity of Defendants' explanation thereof, will require a fact-specific, individualized analysis as to each person within

the Proposed Collective. This Court is strained to accept that such a disparate group of employees were victims of a common policy or plan where it does not appear that they were subject to a common policy or plan, except in the most generalized sense.

In sum, the Proposed Collective includes persons formerly employed in diverse positions at multiple dealerships with different compensation packages whose claims would require substantial individualized determinations. Plaintiffs failed to establish that this Court should facilitate class-wide notice in order for this case to proceed as a collective action.[6]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification will be DENIED. Accordingly, Plaintiffs' claims in Count IV will proceed as individual claims under the FLSA. A separate Order follows.

Dated:  August 16, 2022

/s/
Stephanie A. Gallagher
United States District Judge

---

[6] The parties also dispute the appropriateness of the Plaintiffs' proposed notice. In light of this Court's decision to deny certification, it is unnecessary to resolve the parties' arguments regarding notice.